**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| **THE JESUS CHURCH OF VICTORIA** | § | |
| **TEXAS, INC.,** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO._____** |
| | § | **(JURY)** |
| **CHURCH MUTUAL INSURANCE** | § | |
| **COMPANY** | § | |
| | § | |
| **Defendant.** | | |

**COMPLAINT**

---

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW the Jesus Church of Victoria, Texas Inc., ("Jesus Church" or "Plaintiff")
and files this Complaint, complaining of Church Mutual Insurance Company ("Church Mutual"
or "Defendant"), and for cause of action, Plaintiff would respectfully show this Honorable Court
the following:

**PARTIES**

1.       Plaintiff, the Jesus Church of Victoria County, Texas Inc., is a Texas corporation in the
business of religion.

2.       Defendant Church Mutual Insurance Company is a domestic unincorporated insurance
association headquartered in Wisconsin. This Defendant engages in the business of insurance in
the State of Texas and may be served with process by serving its registered agent for service of
process, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

**JURISDICTION**

3.       This Court has jurisdiction based on diversity of citizenship of the parties under 28 U.S.C
§ 1332 and the amount in controversy is within the jurisdictional limits of the Court.

## VENUE

4.      Venue is proper in the Southern District of Texas, Victoria, Division under 28 U.S.C §1391(b)(2) because the Plaintiff's property and the occurrences made the basis of this Complaint, are located in and/or took place in Victoria County, Texas, which is in this district.

## FACTS

5.      This is a first-party insurance claim dispute arising out of Hurricane Harvey.

6.      Plaintiff, Jesus Church owns a church building, a parsonage, and a shed at 3402 N. Main St. Victoria, Texas, 77901 in Victoria County ("the Property").

7.      Church Mutual sold and issued a commercial Insurance Policy ("the Policy") to protect and insure the church building, the parsonage, and a shed on the Property from perils such as hurricanes, windstorms and hail.

8.      On or about August 25, 2017, Hurricane Harvey roared onto the Texas coastline as a Category 4 Hurricane with extreme wind speeds reaching 130 mph or higher. From August 25th through September 1st, Hurricane Harvey continued to cause widespread devastation and destruction along the Texas Gulf Coast and Victoria area, including producing a record number of tornados, extreme wind speeds, and record setting amounts of rain fall.

9.      The Jesus Church's Property sustained devastating wind and water intrusion damage through the damaged roofs on both the Church building and parsonage. Uplifted shingles on the roof of the shed building were numerous with the loss of some shingles that were blown off. In fact, Harvey's severe winds blew the roof off the parsonage which allowed water to destroy the interior. That home had to be completely gutted after the storm.

10.     Specifically, not only did the roofs of the church building, shed, and parsonage sustain significant wind damage but also the church building's exterior metal siding, and gutters were

severely damaged. As a result of the damages to the church building's roof, water intruded into the attic destroying attic insulation, and interior walls, ceilings, and other interior areas as well. The church building's roof is still leaking today. The shed also experienced wind damage to the wood sidings.

11.     On or about August 26, 2017, Plaintiff filed a claim (the "Claim") on its insurance Policy with its insurance company, Church Mutual, for roof damage, water damage, wind damage, and structural damage, for the church building and parsonage as well as damage to the shed.

12.     At that time, and pursuant to the Policy, Plaintiff made a simple request to Church Mutual—to cover and pay for the cost of repairs to the Property, including, but not limited to, replacement of the roofs for the church building, shed and parsonage, as well as repair of the interior damages to the church building and parsonage,.

13.     At all times relevant, Plaintiff was and is entitled to benefits under its Church Mutual Policy as it specifically covered the damages to the church building, parsonage and shed, caused by a covered peril—Hurricane Harvey. The Policy provided Church Mutual would pay the replacement cost value ("RCV") to repair and/or replace the damages caused by this covered peril.

14.     On or about August 28, 2017, Church Mutual assigned, Sean Odenwald ("Odenwald") as the adjuster responsible for assessing, documenting, and adjusting the Plaintiff's Claim and conducting the initial inspection. Odenwald observed the extensive damage and agreed that it was from the wind storm. He told one of the executives of Jesus Church that the roof should be replaced.

15.     On or about October 5, 2017, Church Mutual changed desk adjusters to assign Kati Marquart ("Marquart") who then assigned field adjuster Kirk Greshem ("Greshem") to perform a second inspection of the Property on behalf of Church Mutual. No doubt, Church Mutual was

anticipating that Gresham would observe less damages in the second inspection than had been observed by Odenwald.

16.     Gresham, however, was not adequately equipped or properly trained/instructed by Church Mutual in handling these types of adjustment of insurance damage claims and as a result, Gresham failed to perform an adequate investigation of the Plaintiff's Claim that would meet the minimum standards of performance pursuant to industry standards, as well as Sections 21.203 and 21.205 of the Texas Administrative Code, applicable law, or otherwise. TEX. ADMIN. CODE §§21.203, 21.205.

17.     On or about January 16, 2018 the inside desk adjuster was changed to Justin Cruz-Uribe ("Cruz-Uribe") and a different field adjuster was assigned. There had been two inspections, but Plaintiff had not received an estimate from either inspection despite requests for same.

18.     Unfortunately, Gresham conducted a substandard inspection which Church Mutual relied upon to adjust the claim. Church Mutual and/or Church Mutual's personnel failed to thoroughly review and properly oversee the work of the assigned adjusters, ultimately approving an improper adjustment and an inadequate, unfair settlement of the Jesus Church's Claim. As a result of the unreasonable investigation, the Jesus Church was considerably underpaid on the Claim and suffered further damages as a result.

19.     In January 2018 an engineer called the Jesus Church and announced that he had been hired by Church Mutual to inspect the Property again. Despite protests for yet another inspection, that inspection took place on February 28, 2018 and was the third inspection of the Property. Plaintiff had yet to receive copies of previous estimates or reports. After numerous requests by email, Plaintiff finally received the engineer's report on April 20, 2018, but did not receive Church

Mutual's letter regarding a final decision on Plaintiff's Claim as Church Mutual had promised to send months before.

20.     On May 15, 2018 Plaintiff sent an email again asking for an update and the decision on the Claim that had been promised months earlier but had not been received. It was not until July 12, 2018 that Plaintiffs finally received a letter explaining Church Mutual's decision on Plaintiff's Claim and an ACV payment for the church building and shed less the deductible of $2500.00. It was not near enough money to make all the necessary repairs.

21.     The inadequacy of Church Mutual's, Sean Odenwald's, and Kirk Greshem's, and the engineering firm's substandard inspections is evidenced by the fact that covered damages and necessary repairs were omitted from the inspections, various estimates and engineering report, and the area and damages that were included were grossly undervalued. For example, despite the fact that Odenwald's, the first adjuster recognized and admitted to an executive of Plaintiff's that the entire roof of the church building needed to be replaced, subsequent inspections found only that the roof needed to be repaired. That roof is still leaking today as of the time of the filing of this petition. Thus, Church Mutual in its final decision misrepresented, among other things, the extent of damage to Plaintiff's church building's roof, the church's interior damages, and the amounts needed to repair these items.

22.     Church Mutual executed three investigations of the Property. Church Mutual failed to adequately supervise, train, and oversee their outside adjusters, Odenwald and Greshem but nonetheless, adopted the estimates of the outside adjusters and the supposedly review of the estimates by the inside adjusters, without question. As a result of these shoddy, substandard investigations and/or adjustments, Plaintiff was significantly underpaid. Even more dissatisfied with a partial payment, Plaintiff sought the help of the attorneys and firm signing this pleading.

23.     It is unclear as to why Church Mutual misrepresented the scope and details of the church building and shed damages, and coverage of the same.

24.     It is clear, however, that Church Mutual failed to thoroughly review and properly oversee the work of its assigned adjusters and/or representatives. Nevertheless, Church Mutual relied on Odenwald and Greshem's estimates, and the engineering report, and ultimately approved the improper adjustment and inadequate, unfair settlement of Plaintiff's Claim.

25.     Plaintiff was largely dissatisfied with the result of Church Mutual and its assigned adjusters'/personnel's improper investigation and over-all mishandling of its Claim. In an attempt to obtain a proper assessment of its damages, Plaintiff retained a licensed professional public adjuster ("P.A.") to assist them with the Claim, and the P.A. submitted to Church Mutual additional documentation and/or information related to the Claim and damages. Specifically, Plaintiff submitted photographs, a detailed estimate of the repairs, receipts, bids, proposals, and varying other information.

26.     There is no question that the Policy between Plaintiff and Church Mutual covered the damages to Plaintiff's Property; therefore, Plaintiff was and is entitled to receive all Policy benefits, among other damages available under the law and equity.

27.     Furthermore, the Policy provided that Church Mutual would pay the RCV to repair and/or replace the damages caused by Harvey, which was a covered peril in the Policy. Church Mutual and its adjusters' failures resulted in a significant under-payment of Plaintiff's Claim. Three substandard investigations as reflected in the inaccurate estimates, did not even meet the minimum standards of performance pursuant to industry standards in Sections 21.203 and 21.205 of the Texas Administrative Code, applicable law, or otherwise. *See* TEX. ADMIN. CODE §§21.203, 21.205.

28.     Plaintiff alleges that together, Defendant Church Mutual and its adjusters/personnel including but not limited to Greshem, and Odenwald, set out to deny and underpay Plaintiff's Claim for properly covered damages. Church Mutual failed to properly train, adequately supervise, and oversee the adjusters' handling of Plaintiff's Claim. As a result, the adjusters failed to perform thorough and reasonable investigations of Plaintiff's Claim or a review of those investigations and estimates. Specifically, Defendants failed to sufficiently inspect and document all damaged areas of the Jesus Church, and other structures, and as such, Greshem and Odenwald, failed to properly estimate the damages and repairs needed. This resulted in a grossly deficient scope and underpayment of Plaintiff's Claim.

29.     At all material times hereto, Greshem and Odenwald were agents of Church Mutual based on their acts during the handling of this Claim, including inspections, adjustments, and aiding in adjusting a loss for or on behalf of the insurer. TEX. INS. CODE §4001.051. Separately, and/or in the alternative, as referenced and described above, Church Mutual ratified the actions and conduct of Greshem and Odenwald including the completion of their duties under common and statutory law.

30.     Compounding Church Mutual's failure to adequately train and supervise the inexperienced adjusters, Church Mutual further failed to adequately review the estimates of the Plaintiff's damages. Rather, Church Mutual, adopted and accepted the substandard inspections and estimates without question. Plaintiff has suffered actual damages resulting from Church Mutual and its personnel's wrongful acts and omissions as set forth above and further described herein. As a result of Church Mutual's unreasonable investigation and underpayment, as well as payment delays, Plaintiff was not provided adequate funds needed to repair Harvey damages to the church building and shed. Plaintiff's Claim was severely underestimated and mishandled by Church Mutual and its

personnel, which prevented Plaintiff from receiving the necessary funds to repair the full extent of damages sustained. In short, Plaintiff's Claim was improperly adjusted. To date, Plaintiff has yet to receive full payment to which it was entitled under the Policy for Hurricane Harvey damages.

31.    Church Mutual and its adjusters/personnel set about to deny and/or underpay Plaintiff's Claim for properly covered damages. As a result of Church Mutual's unreasonable investigation and underpayment, Plaintiff was not provided full coverage for the damages sustained. Plaintiff's Claim was severely under-scoped and mishandled which, in turn, deprived Plaintiff of sufficient funds needed to repair its damages, which has resulted in additional damages. To date, Plaintiff has yet to receive full payment to which they are entitled under the Policy. Further, Plaintiff was left with no alternative but to retain the services of the attorneys listed as signatories on this Petition to assist with its Claim.

32.    Church Mutual intentionally chose and adopted a business model that provided for retaining very few, if any, qualified adjusters as employees or retaining any qualified outside adjusters to perform Church Mutual's non-delegable duties of investigating claims in accordance with applicable Texas law. Further, it is equally as clear, that Church Mutual either had no procedures or had inadequate procedures to monitor or regularly audit the work product of its adjusters and claims personnel. Church Mutual was reasonably aware, knew, or should have known, that the claim estimates generated by its adjusters, inclusive of the estimates at issue in this case, were wholly deficient by any measure under the Policy and applicable law and were likely to result in a considerable underpayment of a claim as occurred with Plaintiff's Claim here.

33.    Insurance companies, like Church Mutual compensate its adjusters and/or claims personnel by incentivizing them to exclude or artificially minimize the amount of storm-related damages payable under its policies, while forcing policyholders to self-perform material aspects of the claim

investigation without training or instruction, and in express contravention of Texas law. The adjusters accepted these terms knowing that they would likely cause their inspections and resulting claim estimates to be minimal, and that they were engaging in claims handling procedures that they were neither qualified nor properly trained to sufficiently undertake.

34.     The Policy between Plaintiff and Church Mutual covered the Harvey damages to Plaintiff's Property. Therefore, Plaintiff is entitled to receive all Policy benefits. There is no question that Church Mutual undervalued and underpaid the majority of damaged items as well as denying others without merit. As a result, resolution of Plaintiff's Claim has been delayed by the deficient and improper claims handling by Church Mutual and its inept adjusters and representatives.

35.     To date, Church Mutual has not adequately compensated Plaintiff for its Hurricane Harvey damages.

36.     It is clear from these facts, Church Mutual, Greshem, and Odenwald, set out to deny and/or underpay properly covered damages. Church Mutual failed to provide full coverage for the damages sustained by Plaintiff and under-scoped and undervalued the damages that were allowed, thus denying Plaintiff an adequate and sufficient payment. To date, Plaintiff has yet to receive full payment under the Policy which has caused a delay in Plaintiff's ability to fully repair the church building, shed and parsonage. Moreover, additional damages have occurred from the lack of repair.

37.     Plaintiff alleges that Church Mutual, with the assistance of Greshem, and Odenwald, set out to deny and underpay Plaintiff's Claim for properly covered damages. Church Mutual failed to properly train, adequately supervise, and/or oversee Greshem and Odenwald's handling of Plaintiff's Claim. As a result, Greshem and Odenwald failed to perform a thorough and reasonable investigation of Plaintiff's Claim. Specifically, they failed to sufficiently inspect and document all damaged areas of Plaintiff's church building and shed and thereby failed to include other damaged

Property such as the interior damages from the roof leak in the church building. The estimates by Greshem and Odenwald are grossly deficient in scope and accordingly, Plaintiff's Claim was underpaid.

38.     On February 19, 2019, Church Mutual issued correspondence in which it notified Plaintiff that pursuant to Section 542A.006 of the Texas Insurance Code, that Church Mutual "elects to assume any liability that may otherwise be attributed to Sean Odenwald, Kirk Greshem, Stephen Wade, and George Hodges relating in any cause of action relating to the above-referenced claim. Therefore, no valid cause of action exists against Mr. Odenwald, Mr. Gresham, Mr. Wade, and Mr. Hodges relating to the above-captioned claim."

39.     By wrongfully denying proper payments to Plaintiff and wholly failing to properly handle Plaintiff's Claim, Church Mutual breached the duty of good faith and fair dealing owed to Plaintiff as insureds in an insurance contract with Church Mutual. "Good faith and fair dealing" is defined as the degree and diligence which a man of ordinary care and prudence would exercise in the management of one's own business. *Arnold v. Nat'l Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex. 1987). A special relationship exists as a result of policyholders like Plaintiff and Church Mutual (the insurer) "unequal bargaining power"—because the insurer has the ability to more easily take advantage of the insured due to an insurer's exclusive control over the evaluation, processing and denial of claims. In legal terms, this unlevel playing field results in a "special relationship" between an insurer and insured and further justifies the imposition of a common-law duty on insurers to deal fairly and in good faith with their insureds. Church Mutual breached its common-law duty by failing to deal fairly and in good faith with its insured, Plaintiff.

40.     Church Mutual's conduct was not only a breach of its common law duty to deal fairly and in good faith with Plaintiff based on this "special relationship" between the parties, but also

10

constitutes a breach of the insurance contract between Church Mutual and Plaintiff. Over a century ago, Justice Learned Hand wrote: "[a] contract is an obligation attached by the mere force of law to certain acts of the parties, usually words, which ordinarily accompany and represent a known intent." *Hotchkiss v. Nat'l City Bank,* 200 F. 287, 293 (S.D.N.Y. 1911).

41.     The insurance Policy in effect between Plaintiff and Church Mutual is a contract wherein the insurance company. Church Mutual offers to provide insurance coverage and services associated therewith in exchange for the policyholder's payment of annual premiums in consideration of the contract. Texas law recognizes a cause of action for breach of contact. Pursuant to Texas law, either party to the contract can initiate legal action against the other party for violations of that contract that causes damages. A breach of contract claim is distinct and independent from a tort claim such as a breach of the duty of good faith and fair dealing or a violation of statutory or other extra-contractual claims. Tort and contract claims are separate and independent, yet they are factually interwoven, and the same evidence is often admissible on both types of claims in an insurance policy claim dispute.

42.     Here, Church Mutual failed to perform its contractual duties to adequately compensate the Plaintiff under the terms of the Policy. Specifically, Church Mutual refused to pay the full proceeds of the Policy, although due notice was made for proceeds to be paid in an amount sufficient to cover the damaged Property, and all conditions precedent to recovery upon the Policy had been carried out and accomplished by Plaintiff. Thus, from and after the time Plaintiff's Claim was presented to Church Mutual, the liability of Church Mutual to pay the full Claim in accordance with the terms of the Policy was reasonably clear. However, Church Mutual refused to pay the Plaintiff in full, despite there being no basis whatsoever upon which a reasonable insurance company would have relied to deny the full payment. Church Mutual's conduct has caused

Plaintiff to lose Policy benefits to which it was entitled, and which should have been paid by Church Mutual, but were not. Church Mutual's conduct constitutes a breach of contract as well as a breach of the common law duty of good faith and fair dealing.

43.     Church Mutual's conduct here includes various torts, such as violations of the Texas Insurance Code. Church Mutual's Policy contract with Plaintiff, does not contain provisions to account for an insurance company's and/or its representatives' (improper) acts or omissions undertaken through their handling of a claim; which incidentally affect the duration and outcome of the claim, and otherwise, to policyholders' detriment. To account for such acts and omissions that fall outside the four-corners of the contract language (but nonetheless affect the claim and/or detrimentally harm the policyholder), the Texas Legislature in 1973 enacted the Texas Deceptive Trade Practices—Consumer Protection Act (hereafter referred to as the "DTPA") to "protect consumers against false, misleading, and deceptive business practices, unconscionable actions…and to provide efficient and economical procedures to secure such protections." TEX. BUS. & COM. CODE §17.44. Specifically, the DTPA provides that a consumer may maintain an action where an insurance company (or one of its employees or agents) commits an act or practice in violation of Chapter 541 and/or 542 of the Texas Insurance Code. TEX. BUS. & COM. CODE §17.50. These enumerated acts (as found within Chapters 541 and 542 of the Texas Insurance Code) are generally not included within the written contractual terms of the insurance policy. These two bodies of law (contract and tort) are neither overlapping, nor mutually exclusive. Rather, they are entirely independent issues under independent bodies of law with unique causes of action and damages available.

44.     A later Texas Legislature specifically created and enacted the Texas Insurance Code to protect consumers, like Plaintiff and to regulate insurance professionals, like Defendant Church

Mutual, because the language of insurance policy contracts (without more) were not properly serving those functions. Chapters 541 and 542 of the Texas Insurance Code include duties and obligations that any person or entity engaged in the business of insurance in the State of Texas must follow. Those duties and obligations are wholly independent of those for which an insurer may be contractually responsible. Specifically, Chapter 541 of the Texas Insurance Code states that "the purpose of this chapter is to regulate trade practices in the business of insurance by: (1) defining or providing for the determination of trade practices in this state that are unfair methods of competition or unfair or deceptive acts or practices; and (2) prohibiting those trade practices." Chapters 541 and 542 of the Texas Insurance Code describe various claims settlement practices, among extensive other rules and requirements with which anyone engaged in the business of insurance in the State of Texas must comply and not violate; as well as deceptive, unfair, and prohibited practices with which anyone engaged in the business of insurance in the State of Texas must not engage or undertake. Insurance policies in Texas, such as Plaintiff's Policy with Church Mutual, is silent as to these statutory provisions.

45.    Church Mutual voluntarily assumed a non-contractual obligation to inspect and value Plaintiff's damages, thereby causing its conduct to be governed by the applicable provisions of the Texas Insurance Code. However, Church Mutual then failed to comply with its obligations and duties under the law for inspecting and valuing covered losses, and likewise, failed to perform its contractual duty to adequately compensate Plaintiff for monies owed to them under the Policy.

46.    Falsehoods and misrepresentations may be communicated by actions as well as by the spoken word; therefore, deceptive conduct is equivalent to a verbal representation. Church Mutual and its agents made misrepresentations by means of deceptive conduct by failing to conduct a reasonable inspection and investigation of Plaintiff's damages. Church Mutual has committed

tort(s) with its numerous misrepresentations, violations of the Texas Insurance Code and otherwise. Specifically, Church Mutual and its personnel, violated Chapter 541 of the Texas Insurance Code by misrepresenting to Plaintiff that some damages to the Property were not covered under the Policy, even though the damages this Property sustained were caused by a covered occurrence. Church Mutual and its personnel further violated the Texas Insurance Code by undervaluing and under-scoping the damages the Plaintiff's incurred and continue to incur. Church Mutual's misrepresentations caused Plaintiff to suffer "actual damages" – which, under the Texas Insurance Code, are those recoverable at common law – as well as reasonable and necessary attorney's fees, and any other damages. Additionally, for violations of Chapter 541 of the Texas Insurance Code, entitles Plaintiff to recover court costs, reasonable and necessary attorney fees, and any other relief the court determines is proper. TEX. INS. CODE §541.152. Church Mutual and its personnel's conduct, as described above and herein, constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices, TEX. INS. CODE §541.060(a)(1).

47.     Church Mutual and its personnel failed to make an attempt to settle Plaintiff's Claim in a prompt, fair, and/or equitable manner, although they were aware of their liability to Plaintiff. As such, Church Mutual's conduct in this regard constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(2)(A). Specifically, Church Mutual and its personnel's failure to properly investigate, their undervaluation of the Claim, and conduct otherwise, caused Plaintiff to lose Policy benefits to which it was entitled, and which should have been paid initially and timely by Church Mutual but were not. Further, Church Mutual's conduct necessitated that Plaintiff retain the services of both a public adjuster and then an attorney to attempt to be made whole related to Plaintiff's Harvey damages. Plaintiff is entitled to recover

actual damages for Church Mutual's violation of this section of the Texas Insurance Code. *Id*.

48.     Church Mutual failed to explain to Plaintiff the reasons for their inadequate claim payment and/or settlement and failed to explain the reason why full payment was not being made. Furthermore, Church Mutual neither communicated that any future settlements or payments would be forthcoming to pay for the entire losses covered under the Policy, nor provided any explanation for the failure to adequately resolve Plaintiff's Claim. As such, Church Mutual's conduct is a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(3). Church Mutual's conduct caused Plaintiff to suffer actual damages and lose Policy benefits to which it was entitled, and which should have been paid initially by Church Mutual but were not. Plaintiff, therefore, is entitled to recover Policy benefits, as actual damages as well as attorney's fees and costs for Church Mutual's and its personnel's violation(s) of this section of the Texas Insurance Code. *Id.*

49.     Furthermore, Church Mutual failed to affirm or deny coverage of Plaintiff's Claim within a reasonable time. Specifically, Plaintiff did not receive from Church Mutual a timely, written indication of acceptance or rejection of Plaintiff's full and entire Claim. Church Mutual's conduct constitutes a violation of Section 541.060(a)(4) of the Texas Insurance Code, Unfair Settlement Practices. *See* TEX. INS. CODE § 541.060(a)(4). Church Mutual's conduct caused Plaintiff to lose Policy benefits to which it was entitled, and which Church Mutual should have paid Plaintiff initially, in full. Plaintiff therefore, is entitled to recover Policy benefits as actual damages for Church Mutual's violation of this section of the Texas Insurance Code as well as all other damages to which it is entitled under the relevant law. *Id.*

50.     Finally, Church Mutual failed to conduct a reasonable investigation and refused to fully compensate Plaintiff under the terms of the Policy. Specifically, Church Mutual, Greshem and

Odenwald performed an outcome-oriented investigation of Plaintiff's Claim, which resulted in a biased, unfair, and inequitable evaluation of Plaintiff's losses on the Property. Church Mutual's conduct constitutes a violation of Section 541.060(a)(7) of the Texas Insurance Code, Unfair Settlement Practices. *See* TEX. INS. CODE § 541.060(a)(7). Church Mutual's conduct caused Plaintiff to lose Policy benefits to which it was entitled, therefore, Plaintiff is entitled to recover Policy benefits as actual damages as well as attorney's fees and costs for Church Mutual's wrongful conduct.

51.     After receiving notice of Plaintiff's Claim, Church Mutual failed to meet its obligations under the Texas Insurance Code regarding timely acknowledging Plaintiff's Claim, beginning an investigation of Plaintiff's Claim, and requesting all information reasonably necessary to investigate Plaintiff's Claim within the statutorily mandated time of receiving notice of Plaintiff's Claim. Church Mutual's conduct is a violation of Section 542.055 of the Texas Insurance Code Prompt Payment Claims Act. *See* TEX. INS. CODE §542.055. Church Mutual's conduct caused Plaintiffs to suffer actual damages which include the loss of Policy benefits to which they were entitled, and which should have been paid by Church Mutual but were not. Plaintiff, therefore, is entitled to recover Policy benefits as actual damages, as well as attorney's fees, interest, costs and all other amounts to which they are entitled, for Church Mutual's violations of this section of the Texas Insurance Code. *Id.*

52.     Church Mutual failed to accept or deny Plaintiff's full and entire Claim within the statutorily mandated time of receiving all necessary information. Church Mutual's conduct constitutes a violation of Section 542.056 of the Texas Insurance Code, Prompt Payment of Claims Act. *See* TEX. INS. CODE §542.056. Church Mutual's conduct caused Plaintiff to suffer actual damages which constitutes the loss of Policy benefits to which they were entitled, and which

Church Mutual should have paid, in full. Plaintiff, therefore, is entitled to recover Policy benefits as actual damages as well as attorney's fees, interest, costs and all other amounts to which it is entitled, for Church Mutual's violations of this section of the Texas Insurance Code. *Id.*

53.     Church Mutual failed to meet its obligations under the Texas Insurance Code regarding payment of Plaintiff's Claim without delay. Specifically, Church Mutual delayed full payment of Plaintiff's Claim longer than allowed, and, to date, Plaintiff still has not received full payment of its Claim. Church Mutual's conduct constitutes a violation of Section 542.058 of the Texas Insurance Code, Prompt Payment of Claims Act. *See* Tex. Ins. Code §542.058. As a result of Church Mutual's violation of Section 542.058 of the Texas Insurance Code, Plaintiff lost Policy benefits to which it was entitled, and which Church Mutual should have paid it timely and in full. Plaintiff, therefore, is entitled to recover Policy benefits as its actual damages as well as attorney's fees, interest, costs and all other amounts to which it is entitled, for Church Mutual's violations of this section of the Texas Insurance Code. *Id.*

54.     From the time Plaintiff's Claim was presented to Church Mutual, the liability of Church Mutual to pay the full claim in accordance with the terms of the Policy was reasonably clear. However, Church Mutual has refused to pay Plaintiff in full, despite there being no basis whatsoever upon which a reasonable insurance company would have relied to deny full payment. Church Mutual's conduct constitutes a breach of the common law duty of good faith and fair dealing.

55.     Additionally, Travelers and its personnel knowingly and/or recklessly made false representations, as described above and herein, as to material facts and/or knowingly concealed from the Plaintiff all or part of material information relevant to their Claim.

56.     As a result of Church Mutual's wrongful acts and omissions, Plaintiff was forced to retain

the professional services of the attorneys and law firm who are representing them with respect to these causes of action and whose signatures appear below on this pleading.

57.     Plaintiff's experience is not an isolated case. The acts and omissions Church Mutual committed in this case, or similar acts and omissions, occur with such frequency that they constitute a general business practice of Church Mutual with regard to handling these types of claims. Church Mutual's entire process is unfairly designed to reach favorable outcomes for the company at the expense of its policyholders, like the Jesus Church.

58.     Church Mutual is liable to the Jesus Church for breach of contract, as well as violations of the Texas Insurance Code, and breach of the common law duty of good faith and fair dealing. Church Mutual's personnel also committed several violations of the Texas Insurance Code, which Church Mutual has agreed to accept liability and/or responsibility under Section 542A.006(a) for its agents and for these acts of its agents.

59.     All conditions precedent to the Plaintiff's claims for relief have been performed or have occurred and/or Church Mutual waived the same. This includes, but is not limited to, providing notice pursuant to Texas Insurance Code 542A.

## CAUSES OF ACTION:
### CAUSES OF ACTION AGAINST CHURCH MUTUAL

60.     Plaintiff incorporates by this reference each and all of the allegations contained in this Complaint as though fully set forth herein.

61.     Church Mutual is liable to Plaintiff for breach of contract, as well as violations of the Texas Insurance Code, and breach of the common law duty of good faith and fair dealing.

## COUNT I.

### BREACH OF CONTRACT

62.     Plaintiff incorporates by this reference each and all of the factual allegations contained in

Paragraphs 1-59 of this Complaint as though fully set forth herein.

63.     Church Mutual's conduct constitutes a breach of the insurance contract made between Church Mutual and Plaintiff. Church Mutual's failure and/or refusal, as described above, to pay the adequate compensation as it is obligated to do under the terms of the Policy in question, and under the laws of the State of Texas, constitutes a breach of Church Mutual's insurance contract with Plaintiff.

## COUNT II.

### NONCOMPLIANCE WITH TEXAS INSURANCE CODE:
### UNFAIR SETTLEMENT PRACTICES

64.     Plaintiff incorporates by this reference each and all of the factual allegations contained in this Complaint as though fully set forth herein.

65.     Church Mutual's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices. *See* TEX. INS. CODE §541.060(a)-§541.060(a)(7). All violations under this article are made actionable by Section 541.151 of the Texas Insurance Code. *See* TEX. INS. CODE §541.151.

66.     Church Mutual's unfair settlement practice, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue, is a violation of Section 541.060(a)(1) and constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. *See* TEX. INS. CODE §541.060(a)(1).

67.     Church Mutual's unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the Claim, even though Church Mutual's liability under the Policy was reasonably clear, is a violation of Section 541.060(a)(2)(A) and constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. *See* TEX. INS. CODE §541.060(a)(2)(A).

19

68.     Church Mutual's unfair settlement practice, as described above, of failing to promptly provide Plaintiff with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for its offer of a compromise settlement of the Claim, is a violation of Section 541.060(a)(3) and constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. *See* TEX. INS. CODE §541.060(a)(3).

69.     Church Mutual's unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the Claim to Plaintiffs, or to submit a reservation of rights to Plaintiffs, is a violation of Section 541.060(a)(4) and constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. *See* TEX. INS. CODE §541.060(a)(4).

70.     Church Mutual's unfair settlement practice, as described above, of refusing to pay Plaintiff's Claim without conducting a reasonable investigation, is a violation of Section 541.060(a)(7) and constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. *See* TEX. INS. CODE §541.060(a)(7).

## COUNT III.

### NONCOMPLIANCE WITH TEXAS INSURANCE CODE:
### THE PROMPT PAYMENT OF CLAIMS

71.     Plaintiff incorporates by this reference each and all of the factual allegations contained in this Complaint as though fully set forth herein.

72.     Church Mutual's conduct constitutes multiple violations of the Texas Insurance Code, Prompt Payment of Claims Act. All violations made under this article are made actionable by Section 542.060 of the Texas Insurance Code. *See* TEX. INS. CODE §542.060.

73.     Church Mutual's failure to acknowledge receipt of Plaintiff's Claim, to commence investigation of the Claim, and to request from Plaintiff all items, statements, and forms that it

reasonably believed would be required within the applicable time constraints, as described above, constitutes a non-prompt payment of the Claim in violation of the Texas Insurance Code Section 542.055.

74.     Church Mutual's failure to notify Plaintiff in writing of its acceptance or rejection of the Claim within the applicable time constraints, constitutes a non-prompt payment of the Claim.  TEX. INS. CODE §542.056.

75.     Church Mutual's delay of the payment of Plaintiff's Claim following its receipt of all items, statements, and forms reasonably requested and required, took longer than the amount of time statutorily allowed, as described above, and is a violation of Section 542.058. Such conduct constitutes a non-prompt payment of the Claim. *See* TEX. INS. CODE §542.058.

## COUNT IV.

### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

76.     Plaintiff incorporates by this reference each and all of the factual allegations contained in this Complaint as though fully set forth herein.

77.     Because an insurer has the ability and more easily can take advantage of the insured due to an insurers exclusive control over the evaluation, processing and denial of claims, insurance companies and their policies present an inherent "unequal bargaining power." In legal terms, this unlevel playing field results in a "special relationship" between an insurer and an insured and further justifies the imposition of a common law duty on insurers to "deal fairly and in good faith" with their insureds.

78.     Church Mutual's conduct however, as described herein, constitutes a breach of the common law duty of good faith and fair dealing owed to insureds in insurance contracts. Church Mutual failed to perform its contractual duties to adequately compensate Plaintiff under the terms

of the Policy. Specifically, Church Mutual refused to pay the full proceeds of the Policy, although due notice was made for proceeds to be paid in an amount sufficient to cover the damaged Property and to restore it to its condition before Harvey. Thus, from and after the time Plaintiff's Claim was presented Church Mutual, the liability of Church Mutual to pay the full Claim in accordance with the terms of the Policy was reasonably clear and there was no basis upon which a reasonable insurer would have relied to deny the full payment.

79.     Church Mutual's failure, as described above, to adequately and reasonably investigate and evaluate Plaintiff's Claim, and to pay the full proceeds of the Policy, although, at that time, Church Mutual knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing owed to Plaintiff. Church Mutual's conduct has caused Plaintiff to lose Policy benefits to which it was entitled, and which Church Mutual should have paid, in full.

**KNOWLEDGE**

80.     Each of the acts described above and herein, together and singularly, was done "knowingly," as that term is used in the Texas Insurance Code and was a producing cause of Plaintiff's damages described herein.

**DAMAGES**

81.     Plaintiff will show that all the acts, taken together or singularly, constitute the producing causes of the damages sustained by Plaintiff.

82.     As previously mentioned, the damages caused by Harvey have not all been properly addressed, or repairs made in the months since, causing further damages to the Property, as well as undue hardship and burden to Plaintiff. These additional damages are a direct result of Church Mutual's mishandling of Plaintiff's Claim in violation of the laws set forth above.

83.    For breach of contract, Plaintiff is entitled to regain the benefit of their bargain for its purchase of the Policy which is the amount of its Claim, together with attorney's fees under Section 38.001 of the Texas Civil Practices and Remedies Code. All conditions precedent to Plaintiff's claims for relief have been performed or have occurred and/or Church Mutual has waived the same.

84.    For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which includes the loss of the benefits that should have been paid pursuant to the Policy, mental anguish, court costs, interest, and attorney's fees, and all other damages to which it is entitled. For knowing conduct of the acts described above, Plaintiff asks for three times its actual damages under Section 541.152 of the Texas Insurance Code. *See* TEX. INS. CODE §541.152.

85.    For noncompliance with Texas Insurance Code, Prompt Payment of Claims Act, Plaintiff is entitled to its actual damages, as well as simple interest on the amount of its Claim as damages each year at the rate determined on the date of judgment, by adding five percent (5%) of the interest rate determined under Section 304.003, Finance Code, together with reasonable and necessary attorney's fees. *See* TEX. INS. CODE §542.060.

86.    For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, exemplary damages, and damages for emotional distress.

87.    For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the attorneys whose names are subscribed to this pleading. Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorneys in the preparation and trial

of this action, including any appeals and/or further legal recourse post-trial.

## JURY DEMAND

88.     Plaintiff hereby requests that all causes be tried by a jury. Plaintiff hereby tenders the

appropriate jury fee with the filing of this Complaint.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that upon trial hereof,

Plaintiff will have and recover such sums as would reasonably and justly compensate it in

accordance with the rules of law and procedure, as to actual damages, treble damages under the

Texas Insurance Code, and all punitive and exemplary damages as may be found. In addition,

Plaintiff requests the award of attorney's fees for the trial and any appeal of this case, for all costs

of Court on its behalf expended, for prejudgment and post-judgment interest as allowed by law,

and for any other and further relief, either at law or in equity, to which they may show themselves

justly entitled.

Respectfully submitted,

**Merlin Law Group, P.A.**

BY:     */s/ Rene M. Sigman*
**\*Rene M. Sigman, Esq.**
State Bar No. 24037492
Fed. Bar No. 900984
J. Ryan Fowler
State Bar No. 24058357
Fed. Bar No. 2248224
rmsdocket@merlinlawgroup.com
515 Post Oak Blvd, Suite 510
Houston, Texas 77027
(713) 626-8880 (Office)
(713) 626-8881 (Facsimile)

**ATTORNEYS FOR PLAINTIFFS**

**\*ATTORNEY IN CHARGE**

24