United States District Court
Southern District of Texas
**ENTERED**
September 14, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| **THE JESUS CHURCH OF VICTORIA TEXAS, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 6:19-CV-00093** |
| | § | |
| **CHURCH MUTUAL INSURANCE COMPANY,** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM OPINION AND ORDER**

The Jesus Church of Victoria, Texas was damaged when Hurricane Harvey hit Texas in August 2017. The Jesus Church of Victoria Texas, Inc. (the "Jesus Church") filed this lawsuit against its insurer, Church Mutual Insurance Company ("Church Mutual"), arguing that Church Mutual mishandled its claim. Church Mutual moves for partial summary judgment, arguing that regardless of whether its coverage determinations were correct, it did not act in bad faith. The Jesus Church disagrees. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Church Mutual's Motion for Partial Summary Judgment.

## I. BACKGROUND

Church Mutual issued a property insurance policy to the Jesus Church covering the main church building and the parsonage (the "Property"). (Dkt. No. 30 at ¶ 2); (Dkt. No. 36 at ¶ 9); *see also* (Dkt. No. 36-1). After the hurricane, the Jesus Church submitted a claim to Church Mutual for damage to the Property. (Dkt. No. 30 at ¶ 3); (Dkt. No. 36 at

¶ 9). Church Mutual acknowledged the claim shortly after and began an investigation. (Dkt. No. 36-2).

In September 2017, Church Mutual assigned an independent adjuster—Sean Odenwald—to inspect the damage to the Property. (Dkt. No. 30 at ¶ 3); (Dkt. No. 36 at ¶ 11). After his inspection, Odenwald recommended that Church Mutual make a payment of $127,502.22 to the Jesus Church. (Dkt. No. 36-6).

On October 1, 2017, Church Mutual sent the Jesus Church a letter requesting 30 additional days to complete its investigation. (Dkt. No. 36-3). Church Mutual requested the extension because of "the heavy claim volume associated with Hurricane Harvey." (*Id.* at 2). Four days later, Church Mutual sent the Jesus Church a letter confirming that the Property had sustained damages from Hurricane Harvey and tendered an advance payment of $40,000 to the Jesus Church. (Dkt. No. 36-16). On October 30, 2017, Church Mutual requested a second 30-day extension, again citing the heavy claim volume associated with Hurricane Harvey. (Dkt. No. 36-4).

On December 20, 2017, Church Mutual received an estimate from the Jesus Church's hired public adjuster: John Olle. (Dkt. No. 42-1 at 53); *see also* (Dkt. No. 42 at 2–3). Church Mutual claims this estimate was the "only statement of loss" the Jesus Church provided. (Dkt. No. 42 at 3).

On January 12, 2018, another Church Mutual adjuster—Kirk Gresham—completed an additional estimate based on his inspection of the Property sometime in the

Fall of 2017.[1] (Dkt. No. 36-20). Gresham determined the replacement cost value of the Jesus Church's claim was $298,568.36—$228,772.92 for the church and $69,795.44 for the parsonage. (*Id.* at 41, 51). In calculating his estimate, Gresham applied a credit for a prior payment in the amount of $127,502.22—the same amount Odenwald (Church Mutual's first adjuster) recommended. (*Id.* at 42–43); (Dkt. No. 36-6 at 2).

On January 26, 2018, the Jesus Church's corporate representative—Joel Steinhauer—sent an email to Church Mutual expressing frustration with how Church Mutual had handled the Jesus Church's claim. (Dkt. No. 36-9 at 2–4). Steinhauer cited delays and switching adjusters as the source of his frustration and accused Church Mutual of deliberately avoiding its obligations under the Policy. (*Id.*)

On February 1, 2018, Church Mutual advised the Jesus Church that it was issuing payment of $216,412.67 for the claim. (Dkt. No. 36-21 at 2). This amount was based on Gresham's estimate, which determined that the replacement cost value of the Property was $298,568.36. (*Id.*). Church Mutual subtracted $39,655.69 for recoverable depreciation, $2,500 for the deductible, and $40,000 for the previous advance payment. (*Id.*). Though Gresham's original estimate erroneously applied a credit for a $127,502.22 payment that Church Mutual never issued, Church Mutual seemingly corrected this error when it issued payment; the only credit for prior payment applied was the $40,000

[1] The Jesus Church states that Gresham performed his inspection on October 13, 2017. (Dkt. No. 36 at ¶ 15). But the report the Jesus Church cites lists the date inspected as September 2, 2017. (Dkt. No. 36-20 at 2).

advance payment. (*Id.*); *see also* (Dkt. No. 42 at 3). Church Mutual issued this payment on February 8, 2018. (Dkt. No. 36-21 at 3).

On February 28, 2018, Church Mutual had the Property inspected again, this time by Unified Building Services & Engineering, Inc. ("UBSE"). (Dkt. No. 36-7 at 3). After completing its inspection, UBSE issued a report detailing its observations and conclusions (the "Engineer's Report"). (*Id.* at 3–7). The Engineer's Report attributed some of the damage to preexisting defects as opposed to Hurricane Harvey. (*Id.* at 6–7)

Nevertheless, on July 12, 2018, Church Mutual issued an additional payment to the Jesus Church of $48,033.20. (Dkt. No. 36-23 at 2). This payment was based on a revised replacement cost value of $355,073.91— which was $56,505.55 higher than Gresham's (Church Mutual's second adjuster) original replacement cost value determination. (*Id.*); *see also* (Dkt. No. 36-21). Church Mutual subtracted $48,128.04 for "recoverable withholding," $2,500 for the deductible, and $256,412.67 for prior payments ($40,000 in October 2017 and $216,412.67 in February 2018). (Dkt. No. 36-23 at 2). This was the final payment Church Mutual made to the Jesus Church. In total, Church Mutual has paid $304,445.87 on the claim. (*Id.*); (Dkt. No. 36-16); (Dkt. No. 36-21).

The Jesus Church filed suit because it was dissatisfied with how its claim was handled and believed that additional amounts were owed.[2] (Dkt. No. 1). The Jesus Church asserts claims for breach of contract, violations of Chapters 541 and 542 of the

---

2 The Jesus Church is a citizen of Texas, and Church Mutual is a citizen of Wisconsin. (Dkt. No. 1 at 1). Neither party disputes that this Court has diversity jurisdiction under 28 U.S.C. § 1332, and the Court finds that it does.

Texas Insurance Code, and breach of the common-law duty of good faith and fair dealing. (*Id.* at 18–22). Church Mutual filed a Motion for Partial Summary Judgment, seeking summary judgment only on the Jesus Church's claims for violations of the common-law duty of good faith and fair dealing and Chapter 541 of the Texas Insurance Code. (Dkt. No. 30 at 2).

## II. LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (internal quotation marks omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

If the movant meets this burden, the nonmovant must then come forward with specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d

538 (1986). The nonmovant must "go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (internal quotation marks omitted). "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019) (internal quotation marks omitted). The nonmovant's burden "will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little*, 37 F.3d at 1075). But the district court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

## III. EVIDENTIARY OBJECTIONS

Both Parties object to certain summary-judgment evidence introduced by the other. (Dkt. No. 36 at 10–11); (Dkt. No. 40). The Jesus Church objects to Church Mutual's Exhibits A–I, arguing these exhibits are inadmissible hearsay and otherwise inadmissible. (Dkt. No. 36 at 10–11). Church Mutual objects to the Jesus Church's Exhibits 12, 14, 15, and 21, arguing these exhibits contain improper expert testimony and are not relevant. (Dkt. No. 40). The Court addresses each Party's objections in turn.

### A. THE JESUS CHURCH'S EVIDENTIARY OBJECTIONS

In what can only be described as a "head-scratcher," the Jesus Church objects to some of Church Mutual's evidence only to introduce that same evidence itself. As

Church Mutual points out, its Exhibits C–I, which the Jesus Church objects to, are *identical* to exhibits the Jesus Church introduces. (Dkt. No. 41 at ¶ 4). Church Mutual's Exhibit A, which the Jesus Church also objects to, includes portions of the Policy. (Dkt. No. 30-1). But the Jesus Church includes the entire Policy as its Exhibit 1, which includes everything in Church Mutual's Exhibit A and then some. (Dkt. No. 36-1); *see also* (Dkt. No. 41 at 3–4). The only exhibit offered by Church Mutual that the Jesus Church objects to and *doesn't* introduce itself is Church Mutual's Exhibit B. (Dkt. No. 41 at ¶ 4). Church Mutual's Exhibit B is a copy of a letter in which Church Mutual acknowledged receipt of the Jesus Church's claim. (Dkt. No. 30-2).

The Court does not rely on any of the exhibits the Jesus Church objects to and did not itself offer, either because they are not relevant to the Court's analysis of the issues raised by the Parties—which is the case for Church Mutual's Exhibit B. Accordingly, the Court **OVERRULES** the Jesus Church's evidentiary objections as moot. *See*, *e.g.*, *Garcia v. City of Laredo*, 5:12-CV-00117, 2014 WL 2815682, at *1 n.1 (S.D. Tex. June 20, 2014).

### B. CHURCH MUTUAL'S EVIDENTIARY OBJECTIONS

#### 1. Exhibit 12

Church Mutual first objects to the Jesus Church's Exhibit 12: the affidavit of Phil Spotts. (Dkt. No. 40 at 2). Church Mutual argues that Spotts's affidavit is inadmissible because it primarily consists of legal opinions, which expert witnesses may not offer. (*Id.* at ¶¶ 2–5). The Jesus Church counters that the affidavit is admissible because it includes factual background information that would be helpful to a jury. (Dkt. No. 46 at ¶¶ 11–13).

"[U]nsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Prevision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (internal quotation marks omitted). Spotts's affidavit consists almost entirely of restating facts found elsewhere in the evidence and drawing legal conclusions concerning the application of the Texas Insurance Code to the Jesus Church's claims. *See* (Dkt. No. 37-1). Spotts walks through each provision of Chapter 541 of the Texas Insurance Code that Church Mutual allegedly violated and opines on why those provisions were violated. (*Id.*). Because Spotts's affidavit is "wholly or almost wholly conclusory," it is inadmissible as summary-judgment evidence.[3] *See Orthopedic & Sports Inj. Clinic v. Wang Lab'ys, Inc.*, 922 F.2d 220, 225 (5th Cir. 1991). Accordingly, the Court **SUSTAINS** this objection.

**2. <u>Exhibit 14</u>**

Church Mutual also objects to the Jesus Church's Exhibit 14, the Underwriting Risk Control Inspection Report (the "Underwriting Report"). (Dkt. No. 36-17); (Dkt. No. 40 at 7). Church Mutual argues that the Underwriting Report is inadmissible because it is irrelevant. (Dkt. No. 40 at ¶¶ 10–14). In Church Mutual's view, the Underwriting Report "conducted over two years before the storm" was not intended to reflect "a

---

[3] Church Mutual does not appear to object to the Jesus Church's Exhibit 12-A, which is Phil Spotts's *report*. *See* (Dkt. No. 36-15). Spotts authored the report before Church Mutual's corporate representative was deposed. Spotts authored the *affidavit* (Exhibit 12) after the deposition. *See* (Dkt. No. 37-1 at 3 ¶ 6). The Court's ruling on this evidentiary objection is limited to Spotts's *affidavit*. (*Id.*).

comprehensive assessment of the property's condition" and is not relevant evidence of the Property's condition before Hurricane Harvey hit. (*Id.* at ¶ 13). The Jesus Church disagrees, arguing that the Underwriting Report is relevant under Federal Rule of Evidence 401. (Dkt. No. 46 at ¶¶ 18–22).

Federal Rule of Evidence 401 states that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401. The Fifth Circuit has described this threshold as a "low bar." *Novick v. Shipcom Wireless, Inc.*, 946 F.3d 735, 741 (5th Cir. 2020). One of the facts at issue in this case is the condition of the Property before Hurricane Harvey. Church Mutual raises valid points as to how much bearing the Underwriting Report has on that question, but those points go to the weight of the evidence, not its admissibility. The Underwriting Report recommends that the overall exterior of the Property was "found to be in overall good condition and good maintenance." (Dkt. No. 36-17 at 6). The Court cannot say that this evidence does not have *any* tendency to make it more likely that the Property was in good condition before the storm. *See* Fed. R. Evid. 401. Because the Jesus Church's Exhibit 14 surpasses Rule 401's "low bar," it is admissible summary-judgment evidence. Accordingly, the Court **OVERRULES** this objection.

**3. <u>Exhibit 15</u>**

Next, Church Mutual objects to the Jesus Church's Exhibit 15, which is Church Mutual's "Claim Handling Best Practices and Guidelines." (Dkt. No. 36-18). Church Mutual argues that it is irrelevant and is therefore inadmissible. (Dkt. No. 40 at ¶¶ 15–

21). Specifically, Church Mutual contends that Exhibit 15 is only referenced in Spotts's affidavit (i.e., Exhibit 12, which it also objects to); Spotts makes only limited references to Exhibit 15; and those references are irrelevant as evidence of bad faith. (*Id.*). In response, the Jesus Church argues that the focus of the inquiry is the "reasonableness" of Church Mutual's claims handling conduct, and that compliance with its own claims handling guidelines is relevant to *how* the claim was handled. (Dkt. No. 46 at ¶¶ 23–26).

As discussed in greater detail below, the central focus of the Court's analysis is whether Church Mutual had a reasonable basis to deny or delay payment of the Jesus Church's claim. The Court **OVERRULES** Church Mutual's objection. *See Garcia*, 2014 WL 2815682, at *1 n.1.

**4. <u>Exhibit 21</u>**

Finally, Church Mutual objects to the Jesus Church's Exhibit 21. (Dkt. No. 40 at ¶¶ 22–25). Exhibit 21 is Church Mutual's Non-Renewal Letter of the Jesus Church's Policy and the Jesus Church's Claims History. (Dkt. No. 36-24). Again, Church Mutual argues that Exhibit 21 is irrelevant. (Dkt. No. 40 at ¶¶ 22–25). The Jesus Church disagrees. (Dkt. No. 46 at ¶¶ 27–30).

The only apparent purpose for which the Jesus Church introduces Exhibit 21 is as evidence that Church Mutual acted in bad faith. Again, as discussed below, whether Church Mutual acted in bad faith turns on whether it had a reasonable basis to deny or delay payment of the Jesus Church's claim. But in undertaking that inquiry, the Court is limited to the facts before the insurer at the time the claim was denied. *Thompson v. Zurich Am. Ins. Co.*, 664 F.3d 62, 67 (5th Cir. 2011). Church Mutual's Non-Renewal Letter was

issued after the claim was allegedly denied and does not otherwise concern the delay of payment. The Court cannot consider it with respect to Church Mutual's alleged bad faith. *See id.* Accordingly, the Court **SUSTAINS** this objection.

## IV. DISCUSSION

Having addressed the evidentiary issues, the Court now turns to the Parties' substantive arguments. Church Mutual moves for summary judgment on the Jesus Church's claims that Church Mutual violated the common-law duty of good faith and fair dealing and failed to comply with Chapter 541 of the Texas Insurance Code.[4] First the Court addresses Church Mutual's argument that these claims fail because the Jesus Church has not suffered an "independent injury." Then, the Court addresses the claims on the merits.

### A. INDEPENDENT-INJURY RULE

Church Mutual argues that the Jesus Church's common-law and statutory claims fail because the Jesus Church did not suffer an injury independent from the loss of benefits. (Dkt. No. 30 at ¶¶ 34–37). The Jesus Church contends no independent injury is required. (Dkt. No. 36 at ¶¶ 33–35). The Court agrees with the Jesus Church.

Both Parties rely on the Supreme Court of Texas's decision in *USAA Texas Lloyds Co. v. Menchaca*. 545 S.W.3d 479 (Tex. 2018). In *Menchaca*, the Supreme Court of Texas described "five distinct but interrelated rules that govern the relationship between

---

[4] Church Mutual has not moved for summary judgment on the Jesus Church's breach-of-contract claim. (Dkt. No. 1 at 18–19) (Count I). Nor has Church Mutual moved for summary judgment on the Jesus Church's claim under Chapter 542 of the Texas Insurance Code. (*Id.* at 20–21) (Count III).

contractual and extra-contractual claims in the insurance context." *Id.* at 489. Three are relevant here.

First, an insured cannot recover policy benefits as damages for the insurer's statutory violation if the policy doesn't give the insured a right to those benefits. *Id.* at 490–95. The Parties agree that a dispute remains as to whether the Jesus Church is entitled to additional benefits under the Policy. Because that remains an open question at this stage, the Jesus Church is not precluded from asserting extra-contractual claims.

Second, "an insured who establishes a right to receive benefits under an insurance policy can recover those benefits as 'actual damages' under the statute if the insurer's statutory violation causes the loss of the benefits." *Id.* at 495. Put differently, "[i]f an insurer's wrongful denial of a valid claim for benefits results from or constitutes a statutory violation, the resulting damages will necessarily include at least the amount of the policy benefits wrongfully withheld." *Id.* at 496 (internal quotation marks omitted). An insured can recover under the Texas Insurance Code even without asserting a breach-of-contract claim. *Id* at 495.

Third, "if an insurer's statutory violation causes an injury independent of the loss of policy benefits, the insured may recover damages for that injury even if the policy does not grant the insured a right to benefits." *Id.* at 489. This "independent-injury rule" says that an insured can assert extra-contractual claims to recover damages for an independent injury even if the policy does not entitle the insured to benefits. *Id.* at 499. It also says that "an insurer's statutory violation does not permit the insured to recover *any* damages

beyond policy benefits unless the violation causes an injury that is independent from the loss of the benefits." *Id.* at 500 (emphasis in original).

*Menchaca* "clarifies definitively that where an insured seeks to recover damages for an insurer's violations of the Texas Insurance Code, the insured must prove *either* (1) a right to receive benefits under the policy; or (2) compliance with the independent-injury rule." *Garza v. Allstate Fire & Cas. Ins. Co.*, 466 F. Supp. 3d 705, 713 (S.D. Tex. 2020) (emphasis added); *accord Burgess v. Allstate Fire & Cas. Ins. Co.*, 641 S.W.3d 474, 485 (Tex. App.—Austin 2021, no pet.). Here, the Jesus Church is pursuing the first option but not the second. Church Mutual's assertion that *Menchaca* requires an independent injury to assert extra-contractual claims is incorrect. *See Lyda Swinerton Builders, Inc. v. Okla. Sur. Co.*, 903 F.3d 435, 451 (5th Cir. 2018) ("[T]he independent-injury rule does not restrict the damages an insured can recover under the entitled-to-benefits rule. Rather, the independent-injury rule limits the recovery of *other* damages that 'flow' or 'stem' from a mere denial of policy benefits." (emphasis in original)).

### B. COMMON-LAW DUTY OF GOOD FAITH

The Court now turns to the merits, starting with the Jesus Church's claim that Church Mutual violated the common-law duty of good faith and fair dealing. (Dkt. No. 1 at ¶¶ 76–79). Under Texas Law, an insurer has a common-law duty of good faith and fair dealing. *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987). Claims alleging violations of this duty are analyzed under the reasonable-basis test. *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997). Under this test, a breach of the duty of good faith and fair dealing by the insurer can only be

found if there was "*no reasonable basis* for denying or delaying payment of a claim or when the insurer fails to determine or delays in determining whether there is any reasonable basis for denial." *Id.* (emphasis in original). Thus, the insured must establish not just the absence of a reasonable basis for denying or delaying payment of the claim, but that the insurer knew or should have known of that absence. *Id.* This requires the insured to show "that there were no facts before the insurer which, if believed, would justify denial of the claim." *Id.* "As long as the insurer has a reasonable basis to deny or delay payment of a claim, even if that basis is eventually determined by the fact finder to be erroneous," the insurer is not liable for breach of the duty of good faith and fair dealing. *Id.* "Evidence establishing only a bona fide coverage dispute does not demonstrate bad faith." *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998).

### 1. Church Mutual's Evidence[5]

Church Mutual argues there is no genuine dispute that it had a reasonable basis for its coverage determination. Church Mutual bears the burden on this issue. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. Church Mutual's chief contention is that it never denied coverage at all and that it paid the Jesus Church's claim. (Dkt. No. 30 at 2, 7). As a result, Church Mutual reasons, the Parties' only remaining disagreement is whether the amount

[5] Throughout this Memorandum Opinion and Order, the Court's review is limited to the specific evidence identified by the Parties in their briefing on Church Mutual's Motion for Partial Summary Judgment. *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012). "If somewhere in a record there is evidence that might show a dispute of material fact, the district court needs to be pointed to that evidence as opposed to having to engage in an extensive search." *Id.*

Church Mutual paid was sufficient. (*Id.*). The Court finds that Church Mutual has provided sufficient evidence to meet its initial burden.

Church Mutual argues that it never denied the claim at all. Church Mutual cites evidence that it ultimately determined the total replacement cost value of the Jesus Church's claim was $355,073.91. (Dkt. No. 30 at ¶ 6); (Dkt. No. 36-23). Based on this total and subtracting the deductible and depreciation, Church Mutual ultimately paid the Jesus Church a total of $304,445.87 for its claim. (Dkt. No. 36-16); (Dkt. No. 36-21); (Dkt. No. 36-23). From Church Mutual's perspective, this payment represented full coverage for the damage. (Dkt. No. 42 at ¶ 1). Thus, according to Church Mutual, the Jesus Church's only remaining dispute is over the amount Church Mutual paid on the claim, which is merely a "bona fide coverage dispute." *Simmons*, 963 S.W.2d at 44.

Church Mutual further contends that regardless of whether the amount it paid on the Jesus Church's claim is later determined to be correct, the amount it paid was not unreasonable or otherwise the product of bad faith. In support, Church Mutual cites the following evidence.

Church Mutual acknowledged the Jesus Church's claim two days after it was received. (Dkt. No. 36-2). Just over one month later, Church Mutual issued an advance payment of $40,000 to the Jesus Church. (Dkt. No. 36-16). The letter accompanying this payment stated that Church Mutual had "confirmed damages caused by Hurricane Harvey to the Church and the [parsonage]" and was issuing advanced payment "until we can determine the agreed scope of repairs." (*Id.* at 2).

Church Mutual's independent adjusters continued to investigate the claim, and based on a detailed estimate, determined the replacement cost value of the Jesus Church's claim was $298,568.36. (Dkt. No. 36-20 at 41, 51). Approximately five months after receiving the claim, Church Mutual issued payment to the Jesus Church based on this replacement cost value, subtracting recoverable depreciation, the deductible, and the prior $40,000 payment, totaling $216,412.67.[6] (Dkt. No. 36-21).

Church Mutual then claims that "[b]ecause [the Jesus Church's] adjuster disagreed with the scope and valuation of the damages as identified by Church Mutual's independent adjusters," Church Mutual continued to investigate the claim. (Dkt. No. 30 at ¶ 5). Church Mutual retained an engineering firm, which conducted a site inspection and issued the Engineer's Report detailing the extent of the storm-related damage during Hurricane Harvey. (Dkt. No. 36-7). After the Engineer's Report, Church Mutual prepared a revised estimate, reflecting a new, increased total replacement cost value of $355,073.91. (Dkt. No. 36-23). Based on this new total replacement cost value and subtracting recoverable depreciation, the deductible, and the two prior payments totaling $256,412.67, Church Mutual issued an additional $48,033.20 payment to the Jesus Church on July 12, 2018. (*Id.*).

6 The Jesus Church argues that Church Mutual's adjuster subtracted $127,502.22 for a prior payment that was never made to the Jesus Church. (Dkt. No. 36 at ¶ 15). Church Mutual agrees that its adjuster's estimate erroneously reflected this prior payment, but asserts that when Church Mutual actually issued payment, the error was corrected. (Dkt. No. 42 at 3). The evidence shows the erroneously applied payment was not factored into the payment actually issued. (Dkt. No. 36-21).

Concerning the five months it took to issue what Church Mutual claims it initially determined to be full payment, Church Mutual attributes the delay to the large number of Hurricane Harvey claims it received and to the Jesus Church's own adjuster's delay in submitting a statement of loss or estimate of damages. (Dkt. No. 42 at 3–4). Church Mutual cites the two letters it sent the Jesus Church requesting additional time due to the heavy claim volume associated with Hurricane Harvey. (Dkt. No. 36-3); (Dkt. No. 36-4). Church Mutual also cites evidence that it received the Jesus Church's required proof of loss on December 20, 2017—less than two months before it issued payment. (Dkt. No. 42-1); *see also* (Dkt. No. 36-1 at 42–43) (Policy provision requiring the insured to provide proof of loss).

Church Mutual has provided sufficient evidence to carry its initial burden. *See Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. The evidence demonstrates that Church Mutual had a reasonable basis for its coverage determination, the payment it issued, and the time it took to issue payment. *See Higginbotham*, 103 F.3d at 459–60. Church Mutual's determination was reasonably based on multiple investigations, reports, and estimates. While Church Mutual's determination could still turn out to be incorrect at trial, the question at this stage is only whether Church Mutual's determination was reasonable, and the evidence shows that it was.

**2. <u>The Jesus Church's Evidence</u>**

Because Church Mutual carried its initial burden, it now becomes the Jesus Church's burden to come forward with specific facts showing a genuine issue for trial. *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1356. The Jesus Church has identified evidence

that it argues shows a genuine issue as to whether Church Mutual denied its claim, whether that denial was reasonable, and whether Church Mutual's delay in issuing payment was reasonable. The Court now evaluates each piece of evidence in turn, ultimately concluding that the Jesus Church has failed to satisfy its burden.

a. Whether the Claim Was Denied

The Jesus Church disputes Church Mutual's position that it never denied the Jesus Church's claim. On this point, the Jesus Church has identified evidence that creates a genuine fact issue. Church Mutual's corporate representative, DeWade Wiggins, testified during his deposition as follows:

> **Questioner**: Okay. And it's Church Mutual's position that they're denying part of this claim for wear and tear, rust, deterioration, hidden or latent defects. Is that correct?
>
> **Wiggins**: Correct.
>
> **Questioner**: Okay. And they're relying on the March 15th, 2018, engineer report to make that determination, right?
>
> **Wiggins**: Yes.

(Dkt. No. 36-19 at 49). This evidence shows that Church Mutual's position, at least at one time, was that it denied part of the Jesus Church's claim because of preexisting defects identified in the Engineer's Report. (*Id.*).

Church Mutual points to other statements from Wiggins's deposition to argue that his testimony is actually consistent with Church Mutual's position that the Jesus Church's claim was never denied. (Dkt. No. 42 at 4). But at the summary-judgment stage, the Jesus Church need only identify evidence to demonstrate a genuine fact issue. Wiggins's

unequivocal confirmation that part of the Jesus Church's claim was denied is sufficient to create a fact issue as to whether Church Mutual denied part of the Jesus Church's claim.

b. Whether the Denial Was Reasonable

But the inquiry doesn't end there. Even if Church Mutual did deny payment for a portion of the claim, Church Mutual is still entitled to summary judgment if it had a reasonable basis to do so. *Higginbotham*, 103 F.3d at 459. The Jesus Church must identify evidence showing there is a genuine dispute over whether there are any facts before Church Mutual, which, if believed, would justify its denial of the Jesus Church's claim. *See id.*

Church Mutual's corporate representative testified that part of the claim was denied based on information in the Engineer's Report. The Jesus Church argues that relying on the Engineer's Report was unreasonable. "[T]he mere fact that an insurer relies upon an expert's report to deny a claim" does not automatically foreclose a finding of bad faith. *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 448 (Tex. 1997); *accord Certain Underwriters at Lloyd's, London v. Prime Nat. Res., Inc.*, 634 S.W.3d 54, 75 (Tex. App.—Houston [1st Dist.] 2019, no pet.). If "the report was not objectively prepared or the insurer's reliance on the report was unreasonable," a jury could still find that the insurer acted in bad faith. *Nicolau*, 951 S.W.2d at 448. Additionally, "evidence casting doubt on the reliability of the insurer's expert's opinions may support a bad-faith finding." *Id.*

As discussed, the Jesus Church has identified evidence that Church Mutual denied part of the Jesus Church's claim based on the Engineer's Report. (Dkt. No. 36-19 at 49). The Jesus Church argues Church Mutual's reliance on the Engineer's Report was

unreasonable for two reasons: (1) the report incorrectly found preexisting defects and (2) Church Mutual erroneously relied on it to determine there was flooding.

Preexisting Defects

Because Church Mutual purportedly relied on the Engineer's Report's findings of preexisting defects to the Property to partially deny the claim, the Jesus Church points to evidence showing there were no preexisting defects to the Property. (Dkt. No. 36 at ¶¶ 21–22). The Jesus Church cites the Underwriting Report, which Church Mutual completed in 2015. (Dkt. No. 36-17 at 2). In the Underwriting Report, Church Mutual found "[t]he overall exteriors of [the Property] to be in overall good condition and good maintenance." (*Id.* at 6). The Jesus Church also points out that none of the adjusters who inspected the Property before the engineer found any preexisting defects. (Dkt. No. 36 at ¶ 46) (citing (Dkt. No. 36-5 at 4); (Dkt. No. 36-20)). Church Mutual argues that this evidence does not show that the Property was free from preexisting defects prior to Hurricane Harvey. (Dkt. No. 40 at ¶¶ 12–13). While that could prove true at trial, the Court may not weigh the evidence at the summary-judgment stage. Nevertheless, the evidence the Jesus Church has provided is insufficient to generate a fact question concerning whether Church Mutual's reliance on the Engineer's Report was reasonable.

First, the fact that the Engineer's Report was inconsistent with the adjusters' previous reports doesn't make it unreasonable for Church Mutual to rely on it.[7] *See*

[7] The Jesus Church raises many arguments related to Church Mutual's adjusters. For instance, the Jesus Church takes issue with Church Mutual changing adjusters, (Dkt. No. 36 at ¶ 4), choosing not to abide by each adjuster's recommendation, (*Id.* at ¶ 40), the duration of the (continue)

*Thompson*, 664 F.3d at 67 ("Conflicting expert opinions, by themselves, do not establish that the insurer acted unreasonably in relying on its own expert."). The Jesus Church must also "bring direct or circumstantial evidence showing that [Church Mutual's] expert's opinion was questionable and that [Church Mutual] knew or should have known that the opinion was questionable." *Id.* The Jesus Church has failed to meet this burden.

Second, even assuming the Underwriting Report *does* show that the Engineer's Report was wrong to find preexisting defects in the Property, the Jesus Church must provide evidence showing not just that the Engineer's Report was inaccurate, but that the error in the engineer's investigation "is of such magnitude as to affirmatively cast doubt on [Church Mutual's] basis for denial." *Id.* at 68. Though the Jesus Church points to actions not taken by the engineer, such as failing to request "maintenance records, receipts, documents, prior photos, or [other] information" about the Property's condition, (Dkt. No. 36 at ¶ 22), it is not Church Mutual's duty to "leave no stone unturned." *Wells v. Minn. Life Ins. Co.*, 885 F.3d 885, 897 (5th Cir. 2018) (internal quotation marks omitted). At most, this evidence shows a genuine dispute as to whether the Engineer's Report's

---

adjusters' inspections, (Dkt. No. 36-15 at 24), and the methodology employed by the adjusters, (*Id.*). These arguments amount to nothing more than disagreements with Church Mutual's investigation of the Jesus Church's claim and its ultimate determination. Even if the Jesus Church's assertions about the adjusters ultimately prove true, they do not change the fact that Church Mutual's coverage determination was supported by numerous inspections and estimates. *See Higginbotham*, 103 F.3d at 459; *see also State Farm Lloyds, Inc. v. Polasek*, 847 S.W.2d 279, 287 (Tex. App.—San Antonio 1992, writ denied) ("[T]he bad faith action is reserved for cases of flagrant denial or delay of payment where no reasonable basis existed, and not for mere unreasonable denial or delay."). Thus, the Jesus Church's arguments related to Church Mutual's adjusters do not "establish the absence of a reasonable basis for denying or delaying payment of the claim." *See Higginbotham*, 103 F.3d at 459.

conclusion about preexisting damage was correct, not that it wasn't "objectively prepared or the insurer's reliance on the report was unreasonable." *Nicolau*, 951 S.W.2d at 448.

Flood Damage

The Jesus Church also provides evidence that Church Mutual relied on the Engineer's Report to determine there was flooding to the Property when in fact there was none.[8] (Dkt. No. 36 at ¶ 39); (Dkt. No. 46 at ¶¶ 15–17). The Jesus Church points to the deposition testimony of its own corporate representative, Joel Steinhauer, who testified that there was no flooding to the Property. (Dkt. No. 36-13 at 12); *see also* (Dkt. No. 36-8 at ¶ 14). In its briefing, Church Mutual agrees but maintains that neither it nor the Engineer's Report "ever alleged that the building flooded." (Dkt. No. 40 at ¶¶ 6–7).

It's true that the Engineer's Report did not find flooding (which is excluded) on the Property—it only found that wind-driven rain (which is not excluded) intruded under the doors and "flooded" the floors. (Dkt. No. 36-7 at 7). Yet Church Mutual's corporate representative, DeWade Wiggins, testified during his deposition that the Property did flood and that this determination was based on the Engineer's Report:

> **Questioner**: [I]s it Church Mutual's position that there was the traditional type of flooding at Jesus Church property that came from the ground or a tidal wave or a body of water?
>
> **Wiggins**: Yes.

---

8 Flooding is relevant because the Jesus Church's Policy contains a "Water Exclusion Endorsement," which "excludes from coverage damage as a result of flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, . . . water under the ground surface pressing on flowing or seeping through foundations, wall, floors, basements, doors, windows or other openings." (Dkt. No. 36-2); *see also* (Dkt. No. 36-1 at 53).

> **Questioner**: Okay. So Church Mutual believes that there was flood on the property from Hurricane Harvey?
>
> **Wiggins**: Yes.
>
> **Questioner**: Okay. Where does Church Mutual obtain the information from to verify floodwaters for that location?
>
> **Wiggins**: The engineer's report.

(Dkt. No. 36-19 at 48).

The conflict between the Engineer's Report and Wiggins's deposition shows that Church Mutual has been inconsistent about whether there was flooding on the Property. But that is irrelevant to whether it was reasonable for Church Mutual to rely on the Engineer's Report to partially deny the Jesus Church's claim. The Jesus Church has provided no evidence that Church Mutual denied coverage because of the policy exclusion for flood damage. The only evidence that there was any denial at all suggests that denial was based on pre-existing defects—not flood damage. (Dkt. No. 36-19 at 49). What is more, Church Mutual has cited evidence that it paid for the wind-driven rain damage the Engineer's Report refers to. (Dkt. No. 40 at ¶ 7) (citing (Dkt. No. 36-20 at 11–12); (Dkt. No. 36-21).

***

The Jesus Church has not provided evidence demonstrating a genuine fact issue about whether Church Mutual's reliance on the Engineer's Report was reasonable. At most, the Jesus Church has shown there is still a dispute over whether the Engineer's Report's findings were accurate and whether Church Mutual's valuation of the claim was correct. In other words, the Jesus Church has shown a "bona fide coverage dispute." *See*

*Simmons*, 963 S.W.2d at 44. The Jesus Church has not shown that Church Mutual's reliance on the Engineer's Report was unreasonable or that the Engineer's Report wasn't objectively prepared. *See Nicolau*, 951 S.W.2d at 448. The Engineer's Report was based on a site visit and examination of the Property, reviewing photographs, and meetings with representatives from the Jesus Church. (Dkt. No. 36-7 at 3–6). It was reasonable for Church Mutual to rely on this report.

c. Whether the Delay Was Reasonable

The Jesus Church argues not just that Church Mutual had no reasonable basis to *deny* its claim, but also that it had no reasonable basis to *delay* its claim. *See Higginbotham*, 103 F.3d at 459 ("A cause of action for breach of the duty of good faith and fair dealing exists when the insurer has no reasonable basis for denying or delaying payment of a claim or when the insurer fails to determine or delays in determining whether there is any reasonable basis for denial."). As stated above, Church Mutual has provided evidence sufficient to carry its initial burden to show that any delay was reasonable: Church Mutual points out that it notified the Jesus Church that there was covered damage and issued an advance payment just over a month after receiving the claim. (Dkt. No. 36-16). Church Mutual also points to the two requests for additional time it made due to the heavy claim volume associated with Hurricane Harvey. (Dkt. No. 36-3); (Dkt. No. 36-4). Last, Church Mutual attributes delay to the Jesus Church. Church Mutual highlights that the insurance policy required the Jesus Church to submit a "signed, sworn proof of loss." (Dkt. No. 36-1 at 43). But the estimate from the Jesus Church's adjuster—the only statement of loss Church Mutual received—was not sent

until December 20, 2017. (Dkt. No. 42-1). Church Mutual issued payment less than two months later. (Dkt. No. 36-21).

In response, the Jesus Church has only provided evidence of the delay itself; it has come forward with no evidence to dispute Church Mutual's explanation for the delay or discount Church Mutual's evidence showing that the delay was reasonable and not the product of bad faith. Accordingly, there is no genuine dispute concerning the Jesus Church's bad-faith claim based on Church Mutual's delay. *See Cooper Indus., Ltd. v. Nat'l Union Fire Ins. Co.*, No. 4:12-CV-01591, 2016 WL 3405295, at *10 (S.D. Tex. June 21, 2016) (finding an eleven-month delay in filing proof of loss meant that the insured could not claim a bad-faith delay); *Gen. Star Indem. Co. v. Sherry Brooke Revocable Trust*, 243 F. Supp. 2d 605, 613 (W.D. Tex. 2001) ("[A]ll that [the plaintiffs] have to support their claim of bad faith is the fact that it took a year and nine months for [the insurer] to deny their claims. This allegation is not sufficient to raise a genuine issue of material fact.").

***

In sum, Church Mutual is entitled to summary judgment on the Jesus Church's common-law duty-of-good-faith-and-fair-dealing claim if Church Mutual had a reasonable basis for its determination. *Higginbotham*, 103 F.3d at 459. The summary-judgment evidence—the investigations, estimates, and reports of Church Mutual's adjusters and its engineer—shows that Church Mutual had a reasonable basis. Even if the Jesus Church could prove at trial that Church Mutual's denial or delay of payment was erroneous, they were not unreasonable. *Id.* The Jesus Church's arguments and evidence establish only a bona fide coverage dispute. *Simmons*, 963 S.W.2d at 44. This is

insufficient to create a genuine dispute as to whether Church Mutual acted in bad faith. *Id.* Accordingly, the Court grants summary judgment in favor of Church Mutual on the Jesus Church's common-law duty-of-good-faith-and-fair-dealing claim.

### C. CHAPTER 541 OF THE TEXAS INSURANCE CODE

The Jesus Church also raises claims under Chapter 541 of the Texas Insurance Code. Some Chapter 541 claims "require the same predicate for recovery" as common-law duty-of-good-faith claims: a showing of bad faith. *Higginbotham*, 103 F.3d at 460. For these Chapter 541 claims, the same "reasonable-basis test" used to evaluate common-law good-faith claims applies. *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 525–26 (5th Cir. 2015).

Not all Chapter 541 claims, however, share the same bad-faith predicate for recovery as common-law duty-of-good-faith claims, and therefore, not all Chapter 541 claims are analyzed under the reasonable-basis test. *Jajou v. Safeco Ins. Co. of Ind.*, No. SA-20-CV-00839-XR, 2022 WL 220391, at *10–12 (W.D. Tex. Jan. 24, 2022); *J.P. Columbus Warehousing, Inc. v. United Fire & Cas. Co.*, No. 5:18-CV-00100, 2021 WL 799321, at *11–12 (S.D. Tex. Jan. 13, 2021); *Greenville Townhome Owners Ass'n, Inc. v. Phila. Indem. Ins. Co.*, 473 F. Supp. 3d 692, 699–700 (N.D. Tex. 2020); *Hall Arts Ctr. Office, LLC v. Hanover Ins. Co.*, 327 F. Supp. 3d 979, 999–1000 (N.D. Tex. 2018). When a Chapter 541 claim relies on a theory other than bad faith, it must be analyzed separately from the bad-faith claims. *Greenville Townhome Owners Ass'n Inc.*, 473 F. Supp. 3d at 699–700 ("Plaintiff's claims under the Texas Insurance Code that do not share the same theory of liability as Plaintiff's

bad faith claim are unrelated to an allegedly incorrect coverage determination and are instead related to other claimed improper practices related to the settlement process.").

The Jesus Church raises claims under Sections 541.060(a)(1), (a)(2)(A), (a)(3), (a)(4), and (a)(7) of the Texas Insurance Code. (Dkt. No. 1 at ¶¶ 64–70). As discussed above, the Jesus Church's theory of liability for its claim that Church Mutual breached the common-law duty of good faith and fair dealing is that Church Mutual unreasonably delayed payment and unreasonably denied part of the claim. The Jesus Church relies on this same theory in support of its Chapter 541 claims against Church Mutual under Sections 541.060(a)(1),[9] (a)(2)(A), and (a)(7). *See* (Dkt. No. 36 at 14–17). Accordingly, for the same reasons the Court grants summary judgment in favor of Church Mutual on the breach of the common-law duty-of-good-faith-and-fair-dealing claims, the Court grants summary judgment on the Jesus Church's claims under Sections 541.060(a)(1), (a)(2)(A), and (a)(7).

This leaves only the claims under Sections 541.060(a)(3) and (a)(4). Unlike the other Chapter 541 claims, the Jesus Church's theory of liability for its claim under Sections 541.060(a)(3) and (a)(4) is not based on bad faith. Under Section 541.060(a)(3), it is an unfair settlement practice if an insurer "fail[s] to promptly provide to a policyholder a

---

[9] Under Section 541.060(a)(1), it is an unfair settlement practice if an insurer "misrepresent[s] to a claimant a material fact or policy provision relating to coverage at issue." The Jesus Church attempts to frame Church Mutual's coverage determinations (which it disagrees with) as misrepresentations of policy provisions. (Dkt. No. 36 at ¶¶ 37–41). The Jesus Church disagreements with Church Mutual's conclusions does not make them misrepresentations. "[A] bona fide dispute over the extent of coverage does not rise to the level of a violation of section 541.060(a)(1)." *Richardson E. Baptist Church v. Phila. Indem. Ins. Co.*, No 05-14-01491-CV, 2016 WL 1242480, at *8 (Tex. App.—Dallas Mar. 30, 2016, pet. denied).

reasonable explanation of the basis in the policy . . . for the insurer's denial of a claim[.]" Tex. Ins. Code § 541.060(a)(3). Under Section 541.060(a)(4), it is an unfair settlement practice if the insurer "fail[s] within a reasonable time to[] affirm or deny coverage of a claim to a policy holder [or] submit a reservation of rights to a policyholder." *Id.* § 541.060(a)(4). For both of these claims, the Jesus Church's theory is that Church Mutual partially denied its claim yet never provided *any* explanation for the denial. (Dkt. No. 36 at ¶¶ 43–45). The Jesus Church cites the deposition of Church Mutual's corporate representative, which shows that Church Mutual did not provide an explanation for its denial prior to litigation. (Dkt. No. 36-19 at 43, 61).

This theory does not rest on whether Church Mutual had a reasonable basis to deny the Jesus Church's claim or otherwise acted in bad faith—the theory is simply that Church Mutual was required to provide an explanation for denying the claim and it failed to do so. Church Mutual's only response is that it did not provide an explanation for the denial because there was no denial—it argues that it never denied the claim. (Dkt. No. 42 at ¶ 1). But as has been discussed, there is a genuine dispute about whether Church Mutual denied part of the claim. (Dkt. No. 36-19 at 49). Because the Jesus Church's Section 541.060(a)(3) and (a)(4) claims are based on Church Mutual's failure to provide an explanation for denying its claim—a different theory than its bad-faith claims—and the evidence provided shows that Church Mutual didn't provide an explanation, the Court denies summary judgment on the Jesus Church's claims under Sections 541.060(a)(3) and (a)(4) of the Texas Insurance Code. *See Jajou*, 2022 WL 220391, at *12 (finding the insured's Section 541.060(a)(4) claim was premised on a different theory than

the bad-faith claims); *J.P. Columbus Warehousing, Inc.*, 2021 WL 799321, at *12 (finding the insured's Section 541.060(a)(3) claim was premised on a different theory than the bad-faith claims).

### D. ADDITIONAL DAMAGES

Church Mutual also moves for summary judgment on the Jesus Church's claim for "additional damages under the Texas Insurance Code and exemplary damages." (Dkt. No. 30 at ¶ 38). Because the Court concludes that Church Mutual is entitled to summary judgment on the Jesus Church's claims under Section 541.060(a)(1), (a)(2)(A), and (a)(7), Church Mutual is likewise entitled to summary judgment on the Jesus Church's request for additional damages based on these claims. *See Riley v. Safeco Ins. Co. of Ind.*, No. SA-20-CV-00481-XR, 2021 WL 4340970, at *5 n.5 (W.D. Tex. Sept. 22, 2021). But because the Jesus Church's Section 541.060(a)(3) and (a)(4) claims survive summary judgment, its request for additional damages based on these claims must also be addressed. (Dkt. No. 1 at ¶ 84).

"When an insurer's violations of Chapter 541 cause the denial of benefits, an insured may recover additional damages of up to three times the amount of actual damages when the complained-of act or acts were done *knowingly*." *Certain Underwriters at Lloyd's, London* 634 S.W.3d at 78 (emphasis added) (citing Tex. Ins. Code § 541.152(b)). The Texas Insurance Code defines "knowingly" as "actual awareness of the falsity, unfairness, or deceptiveness of the act or practice on which a claim for damages under Subchapter D is based." *Id.* (citing Tex. Ins. Code § 541.002(1)).

Church Mutual has failed to meet this burden. *See Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. Church Mutual's only argument is that "the absence of evidence of an independent tort of 'bad faith' necessarily leads to the conclusion that there is no culpable conduct to support finding" additional damages. (Dkt. No. 30 at ¶ 38). It's true that there is no genuine dispute that Church Mutual had a reasonable basis for its determination, foreclosing a finding of bad faith. But as discussed, that finding does not preclude the Jesus Church's Section 541.060(a)(3) and (a)(4) claims, which are brought on the theory that Church Mutual's failure to provide an explanation for denying benefits violated the statute. Violating Sections 541.060(a)(3) and (a)(4) can support a claim for additional damages under Section 541.125(a)(2). Because Church Mutual has not carried its initial burden, the Court denies summary judgment on the Jesus Church's claim for additional damages as to its Section 541.060(a)(3) and (a)(4) claims.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant Church Mutual's Motion for Partial Summary Judgment.[10] (Dkt. No. 30).

The Court **GRANTS** summary judgment in favor of Church Mutual on the Jesus Church's claim for violation of the common-law duty of good faith and fair dealing. (Dkt. No. 1 at ¶¶ 76–79).

[10] Church Mutual styled its objections to the Jesus Church's summary judgment evidence as a Motion to Strike. (Dkt. No. 40). The Court addressed those objections in this Order. Accordingly, the Clerk is **DIRECTED** to terminate this pending motion from the docket.

The Court **GRANTS** summary judgment in favor of Church Mutual on the Jesus Church's claims under Tex. Ins. Code § 541.060(a)(1), (a)(2)(A), and (a)(7). (*Id.* at ¶¶ 66–67, 69–70). Likewise, the Court **GRANTS** summary judgment in favor of Church Mutual on the Jesus Church's claim for additional damages based on these claims. (*Id.* at ¶ 84).

The Court **DENIES** summary judgment on the Jesus Church's claim under Tex. Ins. Code § 541.060(a)(3) and (a)(4). (*Id.* at ¶ 68). Likewise, the Court **DENIES** summary judgment on the Jesus Church's claim for additional damages based on these claims. (*Id.* at ¶ 84).

It is SO ORDERED.

Signed on September 13, 2022.

Drew B Tipton

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**