United States District Court
Southern District of Texas

**ENTERED**

September 14, 2022

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| THE JESUS CHURCH OF VICTORIA TEXAS, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 6:19-CV-00093 |
| CHURCH MUTUAL INSURANCE COMPANY, | § § § | |
| Defendant. | § § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are two motions to strike expert testimony.  Each Party seeks to exclude expert testimony offered by the other, albeit on different grounds.  The Defendant Church Mutual Insurance Company ("Church Mutual") argues that Expert Witness Phillip Spotts's testimony is inadmissible because it is conclusory and pertains to questions of law.  The Plaintiff Jesus Church of Victoria Texas, Inc. (the "Jesus Church") argues that Expert Witnesses D.H. Watson, John Buttrey, Stephen Wade, and Lynn Renlund failed to comply with the written report requirement that applies to retained expert witnesses.  The Court has reviewed the Motions, the Responses, the Jesus Church's Reply, and the applicable law.  For the reasons that follow, the Court **GRANTS in part and DENIES in part** Church Mutual's Motion to Strike.  The Court **DENIES** the Jesus Church's Motion to Strike.

## I.     BACKGROUND

After the Jesus Church sustained damage to its property during Hurricane Harvey, it filed a claim with its insurance company, Church Mutual.  Dissatisfied with the way its claim was handled, including both the payment it received and the time it took to receive payment, the Jesus Church filed this lawsuit.  The Jesus Church's Complaint alleges breach of contract, breach of the duty of good faith and fair dealing, and violations of Chapters 541 and 542 of the Texas Insurance Code.  (Dkt. No. 1).

The allegations in the Jesus Church's Complaint generally implicate how Church Mutual handled the claim.  Both Parties offer expert witnesses who intend to testify about Church Mutual's handling of the claim.  Among other experts, the Jesus Church designated Phillip Spotts as an expert on handling insurance claims.  (Dkt. No. 45-1 at 2–4).  Church Mutual designated D.H. Watson, the engineer who inspected the Jesus Church's property and reported on his observations and conclusions; John Buttrey, one of Church Mutual's independent adjusters; Stephen Wade, another of Church Mutual's independent adjusters; and Lynn Renlund, who was, at the time, employed as Church Mutual's Property Claim Supervisor.  (Dkt. No. 44-1).

Each Party challenges the other's designation of these witnesses.  The Court addresses each Motion to Strike, starting with Church Mutual's Motion, (Dkt. No. 45), and then turning to the Jesus Church's Motion, (Dkt. No. 44).

## II.    CHURCH MUTUAL'S MOTION TO STRIKE

Church Mutual moves to strike Phillip Spotts as a retained expert for the Jesus Church.  (Dkt. No. 45).  Church Mutual contends that Spotts's expert report and affidavit

consist of "unsupported and untestable conclusory statements and impermissible expert testimony regarding issues of law."  (*Id.* at ¶ 1).  The Jesus Church disagrees, emphasizing Spotts's qualifications and arguing that Spotts's testimony is neither conclusory nor otherwise improper.  (Dkt. No. 49).

### A.    LEGAL STANDARD

District courts play a "gatekeeping role" in determining whether expert testimony should be presented to a jury.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597, 113 S.Ct. 2786, 2798, 125 L.Ed.2d 469 (1993).  In fulfilling that role, district courts apply the standards of Rule 702 of the Federal Rules of Evidence:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The Fifth Circuit has interpreted Rule 702 to first require district courts to assess whether "the proffered witness is *qualified* to testify by virtue of his 'knowledge, skill, experience, training, or education.'"  *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) (emphasis added) (quoting Fed. R. Evid. 702).  After determining that an expert witness is qualified, district courts are to "permit only *reliable* and *relevant* expert testimony to be presented to the jury."  *Id.* (emphasis added) (citing *Daubert*, 509 U.S. at 590–93, 113 S.Ct. at 2795–96).

Church Mutual does not challenge Spotts's qualifications or the relevance of his

testimony. Accordingly, the Court analyzes only the testimony's reliability.[1] "Where an

expert's opinion is based on insufficient information, the analysis is unreliable." *Paz v.*

*Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009). "[N]othing in either

*Daubert* or the Federal Rules of Evidence requires a district court to admit opinion

evidence that is connected to existing data only by the *ipse dixit* of the expert. A court

may conclude that there is simply too great an analytical gap between the data and the

opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 519, 139 L.Ed.2d

508 (1997). An expert's "assurances that he has utilized generally accepted principles is

insufficient." *Brown v. Ill. Cent. R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013) (cleaned up). The

party seeking to introduce expert testimony bears the burden of demonstrating that the

expert's findings and conclusions are reliable. *See Moore v. Ashland Chem. Inc.*, 151 F.3d

269, 276 (5th Cir. 1998) (en banc).

### B.   ANALYSIS

In addition to factual recitations and an overview of Spotts's qualifications,

Spotts's report lists several reasons why he finds Church Mutual's handling of the Jesus

Church's claim "substandard and flawed." (Dkt. No. 45-2 at 6). Generally, Spotts states

---

[1]    Courts generally apply the *Daubert* factors to determine whether expert testimony is reliable. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc) (citing *Daubert*, 509 U.S. at 593–95, 113 S.Ct. at 2796–97). These factors, however, do not apply in every case. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167, 1171, 143 L.Ed.2d 238 (1999). The Parties do not raise arguments based on the *Daubert* factors, and the Court finds they are not particularly applicable to the expert testimony at issue here. *Collins v. Safeco Ins. Co. of Ind.*, No. 3:18-CV-01788-X, 2020 WL 95488, at *3 (N.D. Tex. Jan. 8, 2020) (Starr, J.).

that Church Mutual failed to meet minimum industry claim handling standards.  (*Id.*).

Specifically, he opines that a five-hour inspection of the Jesus Church's property was

inadequate, that the database Church Mutual relied on to value the claim predated

significant labor and materials price increases, that the claim was not complex enough to

require the assistance of an engineer, that payment was unreasonably delayed, and that

Church Mutual exercised insufficient oversight and supervision throughout the process.

(*Id.* at 6–7).

One of Spotts's opinions is supported by data and is therefore reliable.  *See Paz*,

555 F.3d at 388.   In his report, Spotts points out that Church Mutual "utilized and

apparently relied on an Xactimate Database from August 2017 in [its] estimates."  (Dkt.

No. 45-2 at 6).  He states that "[i]t is well known within the industry that significant cost

increases in labor and building materials followed Hurricane Harvey and that Xactimate

increased pricing in areas affected by the catastrophe substantially."  (*Id.*).   Thus, by

relying on the outdated database, Spotts contends, Church Mutual undervalued the Jesus

Church's claim.  (*Id.*).

Church Mutual argues that this opinion is conclusory because it is based on

Spotts's bare assertion that this information "is well known in the industry."  (Dkt. No.

45 at ¶ 6).  But his opinion is based on more than this bare assertion.  After stating his

opinion, Spotts's report directs the reader to "[s]ee attached Xactimate 4th Quarter 2017

Bulletin for details."  (Dkt. No. 45-2 at 6).  This attachment is an article on "Xactware

Industry Trends" that describes and includes data on the price increases Spotts refers to

in his report.  (*Id.* at 47–54).  Though this opinion and evidence may still be subject to

"[v]igorous cross-examination, presentation of contrary evidence, and careful instruction

on the burden of proof" at trial, *Daubert*, 509 U.S. at 596, 113 S.Ct. at 2798, it provides an

"objective, independent validation of [Spotts's] methodology." *Moore*, 151 F.3d at 276; *see*

*also Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987) ("As a general rule,

questions relating to the bases and sources of an expert's opinion affect the weight to be

assigned that opinion rather than its admissibility[.]").  Accordingly, it is sufficiently

reliable, and therefore admissible, expert testimony.

Spotts's remaining opinions are unreliable because they are based on insufficient

information.  *Paz*, 555 F.3d at 388.  Spotts states that Church Mutual "failed to meet

minimum industry claim handling standards[.]"  (Dkt. No. 45-2 at 6).  In his report, Spotts

repeatedly references these claim-handling standards without clearly stating what the

standards are or how Church Mutual violated them.  *See, e.g.*, (*Id.* at 4) ("There are well

established industry claims adjusting standards that apply to claims being handled in a

variety of locations.  The standards are universally accepted principles that companies

and adjusters should follow on a day to day basis.").  The closest Spotts comes to

identifying the claim-handling standards is when he discusses a book called *The Claims*

*Environment*:

> James J. Markham (in his book titled The Claims
> Environment,) illustrated long standing claims standards as
> "Therefore, the claim representative's chief task is to seek and
> find coverage, not to seek and find coverage controversies or
> to deny or dispute claims."  "The insurance company should
> not place its interests above the insured's."  "The professional
> handling claims should honor the company's obligations
> under the implied covenant of good faith and fair dealings."

> "Claim representatives should not appear to be looking for a
> way out of the claim or for evidence to support only one side."

(*Id.* at 4).   In the next paragraph of his report, Spotts states that "[a]ny such [claim handling] standard would include the reasoned practice that an insurer must have a legal and contractually justifiable reason in order to underpay, delay or deny a claim" and that "[c]ompanies and their adjusters are expected to be honest and reasonable when handling claims and to make sure the interests of the insured are protected." (*Id.*).

If these are the claim-handling standards Spotts relies on in reaching his opinions, then the Court finds that there is "too great an analytical gap between" these standards "and the opinion proffered." *See Joiner*, 522 U.S. at 146, 118 S.Ct. at 519.  Vague standards about the insurer not placing its interests above the insured's and acting in good faith alone are an insufficient methodology for Spotts to specifically determine that five hours wasn't long enough for Church Mutual's adjusters to perform an adequate investigation, that the Jesus Church's claim was not sufficiently complex to require the assistance of an engineer, that payment was unreasonably delayed, or that Church Mutual exercised too little oversight throughout the process. *See* (Dkt. No. 45-2 at 6–7).  Spotts fails to state the basis on which he reaches conclusions.   It is conclusory to allege, for example, that "Church Mutual and their outside adjusters performed [a] minimal independent investigation." (*Id.*).

Spotts's report is analogous to the expert testimony in *Brown v. Illinois Central Railroad Company*.  705 F.3d at 535–37.  In that case, the Fifth Circuit affirmed the district court's holding that the plaintiffs' expert had "failed to articulate a credible methodology

to sustain his conclusions." *Id.* at 536.  The Fifth Circuit explained how the plaintiffs'

expert "professed to base his findings on the standards and customs of the transportation

engineering profession" and that his expert report "mentioned a variety of . . . guidelines

and publications on roadway design and traffic control devices." *Id.*  Nevertheless, the

expert's "report failed to explain how any of these authorities support [the expert's]

conclusions[.]"  *Id.*  "The expert's assurances that he has utilized generally accepted

principles," the Fifth Circuit found, "is insufficient." *Id.* (cleaned up).

"Apparently recognizing the lack of objective support for his findings," the

plaintiffs' expert in *Brown* "emphasized his own education and experience." *Id.* at 536–

37 (internal quotations omitted).  The Jesus Church does the same thing here.  In its

Response, the Jesus Church repeatedly emphasizes "Spotts' extensive background and

experience in claims handling." (Dkt. No. 49 at ¶¶ 8–9, 12–16).  But when it comes to the

question of *reliability*, qualifications alone were insufficient in *Brown*, and they are

insufficient here.  *Brown*, 705 F.3d at 537 ("But we have long held that without more than

credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible."

(cleaned up)); *see also Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d

512, 529–30 (5th Cir. 2015) (finding an insurance claims handling expert's testimony was

conclusory when based on the expert's own untestable view of custom and practice in

the industry).[2]  The Jesus Church faults Church Mutual for "ignor[ing] Spotts' extensive

---

2        The Jesus Church attempts to distinguish this case by pointing out that the Fifth Circuit
affirmed the district court based not just on the conclusory nature of the opinion, but also because
the expert lacked experience and knowledge. (Dkt. No. 49 at ¶ 15).  The Jesus Church, however,
(continue)

background and experience in claims handling and instead shift[ing] the focus on the

content[.]" (Dkt. No. 49 at ¶ 12). But the content of the expert's testimony is precisely

where the Court must focus when determining reliability. As stated above, Spotts's

qualifications are not in question here. That said, even highly qualified experts must

provide "some objective, independent validation of [their] methodology." *Moore*, 151

F.3d at 276. And Spotts has failed to do so here. In sum, these opinions are not "the

product of reliable principles and methods," nor has Spotts "reliably applied the

principles and methods to the facts of the case." Fed. R. Evid. 702(c)–(d); *see also Collins*

*v. Safeco Ins. Co. of Ind.*, No. 3:18-CV-01788-X, 2020 WL 95488, at *3 (N.D. Tex. Jan. 8, 2020)

(Starr, J.) (holding an insurance-claims expert's testimony was unreliable because it was

based "solely from [the expert's] own experience as a claims adjuster").

Accordingly, the Court grants in part and denies in part Church Mutual's Motion

to Strike. Spotts's testimony concerning the Xactimate database and the corresponding

portion of his report is admissible. (Dkt. No. 45-2 at 6). The Court excludes the remainder

of Spotts's testimony and report.[3] *See, e.g., Poole-Ward v. Affiliates for Women's Health, P.A.*,

---

ignores that the Fifth Circuit found Weiser-Brown's expert's testimony to be conclusory for nearly the same reason the Court finds much of Spotts's opinion to be conclusory: that the opinions are based on Spotts's own "view of custom and practice in the industry." *See Weiser-Brown*, 801 F.3d at 529. And as *Brown* teaches, an expert's failure to support his opinions is grounds for excluding his testimony. 705 F.3d at 536–37.

[3]     The Court also grants Church Mutual's motion to strike Spotts's separate affidavit. (Dkt. No. 45 at ¶¶ 8, 12) (citing (Dkt. No. 37-1)). As discussed in this Court's Memorandum Opinion & Order granting in part and denying in part Church Mutual's Motion for Partial Summary Judgment, Spotts's affidavit consists almost entirely of impermissible legal conclusions. "Experts cannot 'render conclusions of law' or provide opinions on legal issues." *Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020) (quoting *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009)).

(continue)

329 F.R.D. 156, 173 (S.D. Tex. 2018) (Rosenthal, C.J.) (granting in part and denying in part

a motion to strike expert testimony and holding that the expert could testify on a limited

range of topics); *Bray Int'l, Inc. v. Comput. Assocs. Int'l, Inc.*, No. 4:02-CV-00098, 2005 WL

2405924 (S.D. Tex. Sept. 29, 2005) (Rainey, J.) (same).

## III.    THE JESUS CHURCH'S MOTION TO STRIKE

The Jesus Church also filed a Motion to Strike, albeit on very different grounds.

(Dkt. No. 44).  The Jesus Church contends that Church Mutual failed to comply with the

reporting requirements of Federal Rule of Civil Procedure 26(a)(2)(B) for expert witnesses

D.H. Watson, John Buttrey, Stephen Wade, and Lynn Renlund.  (*Id.* at 4).  In response,

Church Mutual asserts that Rule 26(a)(2)(B) does not apply to these four witnesses

because they were not retained or specially employed to provide expert testimony, and

therefore they need only comply with the less stringent requirements of Rule 26(a)(2)(C).

(Dkt. No. 50).

---

Spotts violates this principle.  For example, Spotts claims that the policy did not require the Jesus Church to submit a proof of loss.  *See Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 428 (5th Cir. 2007) ("The interpretation of an insurance policy, like any contract, is a legal question[.]").  Arguments about the proper interpretation of the insurance policy can be raised at trial.  The Court merely holds here that such arguments are beyond the scope of permissible expert testimony.  *Sheet Metal Workers, Int'l Ass'n, Local Union No. 24 v. Architectural Metal Works, Inc.*, 259 F.3d 418, 424 n.4 (6th Cir. 2001) ("[T]he construction of unambiguous contract terms is strictly a judicial function; the opinions of percipient or expert witnesses regarding the meaning(s) of contractual provisions are irrelevant and hence inadmissible."); *Technip Offshore Contractors v. Williams Field Servs.*, No. 4:04-CV-00096, 2006 WL 581273, at *6 (S.D. Tex. Mar. 7, 2006) (Rosenthal, C.J.) ("As both parties correctly argue in attempting to exclude the other's expert, contract interpretation is a legal question for the court to decide.").

### A.     LEGAL STANDARD

Parties must disclose the identities of proposed expert witnesses.  Fed. R. Civ. P.

26(a)(2)(A).  Under Rule 26(a)(2)(B), experts "retained or specially employed to provide

expert testimony in the case or [] whose duties as the party's employee regularly involve

giving expert testimony" must also provide a written report, prepared and signed by the

witness, which complies with each of the requirements listed in Rule 26(a)(2)(B)(i)–(vi).[4]

Under Rule 26(a)(2)(C), however, *non-retained* experts are not required to submit

written reports; rather, they must provide only a disclosure stating "the subject matter on

which the witness is expected to present evidence under Federal Rule of Evidence 702,

703, or 705" and "a summary of the facts and opinions to which [they are] expected to

testify."  Fed. R. Civ. P. 26(a)(2)(C); *see also* Fed. R. Civ. P. 26, Advisory Committee Notes

to 2010 Amendments (stating Rule 26(a)(2)(C) applies to witnesses who are "not required

---

[4]      Rule 26(a)(2)(B) reads in full:

> **(B)** *Witnesses Who Must Provide a Written Report.*  Unless otherwise
> stipulated   or   ordered   by   the   court,   this   disclosure   must   be
> accompanied   by   a   written   report—prepared   and   signed   by   the
> witness—if   the   witness   is   one   retained   or   specially   employed   to
> provide expert testimony in the case or one whose duties as the party's
> employee regularly involve giving expert testimony.  The report must
> contain:
>
>> **(i)** a complete statement of all opinions the witness will express
>> and the basis and reasons for them;
>>
>> **(ii)** the facts or data considered by the witness in forming them;
>>
>> **(iii)** any exhibits that will be used to summarize or support them;
>>
>> **(iv)** the witness's qualifications, including a list of all publications
>> authored in the previous 10 years;
>>
>> **(v)** a list of all other cases in which, during the previous 4 years,
>> the witness testified as an expert at trial or by deposition; and
>>
>> **(vi)** a statement of the compensation to be paid for the study and
>> testimony in the case.

to provide a report under Rule 26(a)(2)(B) [but] may both testify as a fact witness and also provide expert testimony"). The disclosure requirement for non-retained expert witnesses under Rule 26(a)(2)(C) is "considerably less extensive than the report required by Rule 26(a)(2)(B)" for retained experts. Fed. R. Civ. P. 26, Advisory Committee Notes to 2010 Amendments.

There is little Fifth Circuit precedent applying Rule 26(a)(2)(C) to non-retained experts, so the Court looks to other district courts within the Fifth Circuit and other courts of appeals. Distinguishing between retained experts and non-retained experts should be done "in a common sense manner." *MGMTL, LLC v. Strategic Tech.*, No. 20-2138-WBV-MBN, 2022 WL 474161, at *4 (E.D. La. Feb. 16, 2022) (internal quotation marks omitted). "While a retained expert is recruited to provide expert testimony without any prior, personal knowledge of the facts giving rise to litigation, a non-retained expert's testimony 'arises not from his enlistment as an expert, but, rather, from his ground-level involvement in the events giving rise to the litigation.'" *Ferrara Land Mgmt. Miss., LLC v. Landmark Am. Ins. Co.*, No. 1:19cv956-HSO-JCG, 2021 WL 4819461, at *2 (S.D. Miss. July 19, 2021); *accord Downey v. Bob's Discount Furniture Holdings, Inc.*, 633 F.3d 1, 6–7 (1st Cir. 2011).

Non-retained expert witnesses "are typically limited to testifying about their opinions formed as a result of their knowledge of the case gained through direct observation." *Ferrara Land Mgmt. Miss., LLC*, 2021 WL 4819461, at *2. These witnesses "must testify from the personal knowledge they gained on the job," which "may limit their testimony." *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355,

371 (7th Cir. 2017); *accord Timpson ex rel. Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.*, 31 F.4th 238, 253 (4th Cir. 2022).  These experts still "may be asked questions that implicate their expertise," however, "they cannot be asked to opine about broader issues beyond their own personal involvement[.]"  *Ferrara Land Mgmt. Miss., LLC*, 2021 WL 4819461, at *2.  In other words, "the scope of a non-retained expert's testimony is limited to expert opinions based upon her personal knowledge and observations." *MGMTL, LLC*, 2022 WL 474161, at *4.

B.   ANALYSIS

Each of the four witnesses the Jesus Church moves to strike had personal involvement in the events giving rise to this lawsuit before litigation commenced.  None was retained for the express purpose of providing expert testimony in this lawsuit. Watson was the engineer who inspected the property and issued a report as part of the claims-handling process.   (Dkt. No. 44-1 at 1–2).   Buttrey and Wade were both independent adjusters who also attended inspections of the Jesus Church's property and prepared reports and estimates as part of the claims-handling process.  (*Id.* at 2–4). Renlund was, at the time, employed by Church Mutual as the Property Claim Supervisor and was initially designated as Church Mutual's corporate representative.  (*Id.* at 4–5).

Because each of these four witnesses was involved in the events giving rise to the lawsuit before litigation commenced and each formed opinions concerning the property damage and claims-handling process while carrying out his or her job duties, each was properly designated as a non-retained expert witness under Rule 26(a)(2)(C).  *See Rivera v. Walmart, Inc.*, No. 19-12616, 2022 WL 1080976, at *4 (E.D. La. Mar. 7, 2022).  These non-

retained experts were not required to provide an expert report under Rule 26(a)(2)(B). And the Jesus Church only argues that these four witnesses failed to comply with Rule 26(a)(2)(B); it does not challenge these witnesses' compliance with Rule 26(a)(2)(C).[5] *See* (Dkt. No. 44-1).

By designating these witnesses as non-retained experts under Rule 26(a)(2)(C), however, these expert witnesses' testimony will be limited to "facts and opinions that were not produced specifically in preparation for the trial of this matter." *See MGMTL, LLC*, 2022 WL 474161, at *6. This includes observations and opinions regarding these witnesses' inspections of the Jesus Church's property, the findings and conclusions reached in the estimates and reports these witnesses completed during the claims handling process, and other direct observations and opinions developed during the claims-handling process. *See id.* "To the extent the Witnesses stray into purely expert testimony related to the prosecution of this litigation and not their involvement in the

---

[5]     Because these witnesses were properly designated under Rule 26(a)(2)(C), two of the Jesus Church's remaining arguments are inapplicable.  First, the Jesus Church contends that because these witnesses' reports do not comply with Rule 26(a)(2)(B), the Jesus Church cannot determine whether these witnesses are qualified. (Dkt. No. 44 at ¶ 15).  But these witnesses were not required to comply with Rule 26(a)(2)(B) because each had ground-level involvement in the events giving rise to this litigation. *See Downey*, 633 F.3d at 6.  Thus, these witnesses fulfilled the disclosure requirements that applied to them.  Fed. R. Civ. P. 26(a)(2)(C).

Second, the Jesus Church contends that Church Mutual improperly suggested in its expert disclosures that the Jesus Church could discover the full extent of the experts' opinions by taking their depositions. (Dkt. No. 44 at ¶¶ 19–20).  True, attempting to fulfill Rule 26(a)(2)(B)'s written report requirement for retained experts by stating that the necessary information can be elicited from the expert during his deposition would likely be insufficient.  But these experts were not required to provide written reports under Rule 26(a)(2)(B); as non-retained experts, they only had to comply with Rule 26(a)(2)(C).  And the Jesus Church does not argue that these four expert disclosures failed to comply with Rule 26(a)(2)(C).  Accordingly, Church Mutual's suggestion that more information could be obtained by deposing these witnesses is harmless, as the information in the disclosures was alone sufficient to satisfy Rule 26(a)(2)(C).

underlying events, [the Jesus Church] can object at trial based on the lack of Rule 26 reports[.]" *See Beechgrove Redevelopment, L.L.C. v. Carter & Songs Plumbing, Heating & Air-Conditioning, Inc.*, No. 07-8446, 2009 WL 981724, at *7 (E.D. La. Apr. 9, 2009).

These limitations apply to all forms of the experts' testimony. For instance, the Jesus Church specifically challenges supplemental reports authored by Watson, Buttrey, and Wade after litigation had commenced. (Dkt. No. 44 at ¶¶ 13, 16); *see also* (Dkt. No. 53 at ¶ 8). As discussed, Watson, Buttrey, and Wade have been designated as non-retained experts under Rule 26(a)(2)(C), so testimony in their reports must be limited to "facts and opinions that were not produced specifically in preparation for the trial of this matter." *See MGMTL, LLC*, 2022 WL 474161, at *6.

The supplemental reports that the Jesus Church challenges have not all been provided to the Court. The Jesus Church did not attach these supplemental reports to its Motion. Church Mutual has attached supplemental reports by Watson and Wade to its Response, (Dkt. No. 50-1); (Dkt. No. 50-2), and the Jesus Church has expressly challenged these attached reports. (Dkt. No. 53 at ¶ 8). But neither Party attached a supplemental report from Buttrey. Nor is it clear that the two supplemental reports attached to Church Mutual's Response are the only reports by Watson and Wade the Jesus Church challenges. *See* (Dkt. No. 44 at ¶¶ 13, 16).

It is further unclear whether the two reports attached to Church Mutual's Response consist partly or entirely of facts and opinions developed specifically for trial. For instance, the Watson supplemental report attached to Church Mutual's Response is actually two separate reports. The first is dated February 18, 2019. (Dkt. No. 50-1 at 2).

15

That is five months before the Jesus Church submitted the notice required by statute for

bringing an action under the Texas Insurance Code. *See* Tex. Ins. Code. § 542A.003. And

it is eight months before the Jesus Church filed this lawsuit. (Dkt. No. 1). The second of

Watson's reports is dated December 23, 2020 — after this litigation commenced. (Dkt. No.

50-1 at 4). But it claims to respond to one of the Jesus Church's experts by "identifying

facts and information relied upon in" the reports Watson filed *before* litigation

commenced. (*Id.*). Likewise, despite postdating this lawsuit and acknowledging that

"the claim has gone to litigation," the Wade supplemental report attached to Church

Mutual's Response claims to "outline [Wade's] involvement with the claim[.]" (Dkt. No.

50-2 at 2). It appears that these supplemental reports might be partly or wholly based on

these witnesses' personal involvement in Church Mutual's handling of the Jesus Church's

claim.

The Court concludes that the admissibility of supplemental reports by these

witnesses is better addressed at trial. *See*, *e.g.*, *Escamilla v. C.R. Bard Inc.*, No. SA-19-CV-

01103-FB, 2021 WL 3761224, at *6 (W.D. Tex. Aug. 25, 2021) (determining that arguments

about whether an expert's report was admissible were "better addressed at trial through

a motion in limine or contemporaneous objection"); *see also Novedea Sys., Inc. v. Colaberry,

Inc.*, No. 6:20-cv-180-JDK, 2021 WL 6618488, at *2 (E.D. Tex. Nov. 8, 2021); *Aspen Specialty

Ins. Co. v. Yin Invs. USA, LP*, No. 6:20-cv-00153, 2021 WL 4171561, at *1–2 (E.D. Tex. Aug.

9, 2021). The Jesus Church has not provided all the supplemental reports to which it

objects, nor has it identified a sufficient basis to determine whether the supplemental

reports provided by Church Mutual should be entirely excluded, partly excluded, or

admitted.  These reports will be evaluated in advance of trial consistent with the Court's

holdings in this Order.  The admissibility of any supplemental reports will depend on

whether they consist of opinions based on the witness's personal knowledge and

observations during the claims handling process or opinions developed in preparation

for this litigation.  The Court expresses no view on the admissibility of any supplemental

reports at this juncture.

***

Watson, Buttrey, Wade, and Renlund[6] were properly designated as non-retained

expert witnesses under Rule 26(a)(2)(C).  Each had personal knowledge of the events

giving rise to this lawsuit and developed opinions as part of those events.  Because they

were designated as non-retained experts under Rule 26(a)(2)(C), these witnesses'

testimony will be limited to facts and opinions not specifically developed in preparation

for trial.  Accordingly, the Court denies the Jesus Church's Motion to Strike.[7]

---

[6]    Church Mutual states that "since Ms. Renlund has retired and no longer is employed with Church Mutual, her role is being fulfilled by DeWade Wiggins, who was presented as Church Mutual's Rule 30(b)(6) representative to testify in the same capacity."  (Dkt. No. 50 at ¶ 17).  The Jesus Church does not move to strike or exclude Wiggins's testimony.  Accordingly, in the alternative, the Court denies the motion to strike Lynn Renlund as moot.  *Janvey v. GMAG LLC*, No. 3:15-CV-0401-N-BQ, 2016 WL 11782224, at *2 (N.D. Tex. Oct. 17, 2016) (collecting cases denying as moot a motion to strike expert testimony after the expert was withdrawn).

[7]    Church Mutual raises the alternative argument that "[e]ven assuming, *arguendo*, that Defendant's designations of its non-retained experts did not strictly fulfill the requirements of Rule 26(a)," its failure was "substantially justified" or "harmless" under Rule 37(c)(1).  (Dkt. No. 50 at ¶ 18).  But Church Mutual does not engage with the relevant factors or otherwise sufficiently explain why any failure to comply with Rule 26(a) was substantially justified or harmless.  *See Brumfield v. Hollins*, 551 F.3d 322, 330 (5th Cir. 2008).

## IV.    CONCLUSION

For the forgoing reasons, the Court **GRANTS in part and DENIES in part** Church Mutual's Motion to Strike Phillip Spotts as Expert Witness for the Plaintiff. (Dkt. No. 45). Spotts's testimony is limited to his opinion concerning the Xactimate database and the corresponding portion of his report.

The Court **DENIES** the Jesus Church's Motion to Strike, Limit, and/or Exclude the Testimony of Defendant's Experts. (Dkt. No. 44). Church Mutual's non-retained expert witnesses' testimony is limited to their observations and opinions that were not produced specifically in preparation for trial in this case.

The Court **DENIES** all other requested relief.

It is SO ORDERED.

Signed on September 13, 2022.

_____

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**